```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                             19 CR 552 (GHW)

EDWARD SHIN,

            Defendant.
                                           Conference
------------------------------x

                                           New York, N.Y.
                                           August 14, 2019
                                           10:05 a.m.

Before:

              HON. GREGORY H. WOODS,

                                District Judge

                        APPEARANCES

GEOFFREY S. BERMAN
     United States Attorney for the
     Southern District of New York
BY:  TARA MARIE LaMORTE
     DANIEL M. TRACER
     Assistant United States Attorneys

PAUL BRINKFIELD
     Attorney for Defendant
```

1          (Case called)

2          THE DEPUTY CLERK: Will the parties please state your

3  names for the record.

4          MS. LaMORTE: Good morning, your Honor. Tara LaMorte

5  for the government. With me at counsel table is Daniel Tracer,

6  also for the government.

7          THE COURT: Good morning.

8          MR. BRICKFIELD: Paul Brickfield for Edward Shin.

9          THE COURT: Good morning. Thank you very much for

10 being here.

11         I understand the defendant has already been arraigned

12 before the assigned magistrate judge. As a result, my agenda

13 for this conference is relatively straightforward.

14         I expect to hear from the United States about the

15 nature of the charges. I've read the complaint and the other

16 documents on the docket. I want to talk about discovery and to

17 set a schedule for discovery. And then I hope to set a

18 schedule for next steps in the case based on that information.

19         So with that introduction, counsel for the

20 United States, what can you tell me about the nature of this

21 case.

22         MS. LaMORTE: Sure, your Honor. This case involves

23 several fraud schemes that were perpetrated by the defendant

24 while he was the CEO of a bank. Those schemes were designed to

25 line his pocket while at the same time they put the bank at

1  risk.

2  The bank at issue is the Noah Bank. It's a regional
3  bank that caters to the Korean community. It's headquartered
4  in Pennsylvania, and it has offices in Pennsylvania, New York,
5  and New Jersey.

6  During the relevant time period in this case, which
7  was 2009 to 2012, a good portion of the bank's business
8  involved issuing SBA-guaranteed loans.

9  As the Court may be aware, SBA is the Small Business
10 Administration. It's a government agency that's charged with
11 helping small businesses get off the ground and succeed. To
12 that end, they will guarantee loans that are issued by
13 commercial lenders, including Noah Bank.

14 So it's not a direct lender. It will just guarantee a
15 loan. Obviously there are rules and regulations, however, that
16 govern when the SBA is willing to guarantee a commercial loan
17 to a small business.

18 Now, a good portion of Noah Bank's business involved
19 issuing these SBA loans. And the defendant's fraud scheme
20 revolved around the bank's issuance of these loans in violation
21 of SBA rules and regulations.

22 And obviously the SBA does not guarantee or may not
23 guarantee these loans if its rules and regulations are not
24 followed which are designed for a number of reasons, but
25 primarily to ensure the soundness of the loan and that it's

1  being used for proper purposes.

2            So the charges that we have involve primarily around
3  two schemes.  One involves an SBA rule that precludes employees
4  or officers of a bank from having an interest in a company that
5  is the recipient of an SBA loan.

6            And here in this case, the defendant, the CEO of the
7  bank, was involved in the issuance of SBA loans to companies in
8  which he secretly held an ownership interest which was not
9  disclosed to the SBA.

10           I should add that while this case primarily revolves
11 around SBA loans, this conduct, which I'm describing also
12 occurred in connection with the bank's commercial loan
13 activity.

14           The second scheme involved broker fees.  So under SBA
15 rules and regulations, the bank is precluded from paying out
16 broker fees, but a borrower who uses a broker in connection
17 with getting a loan from a bank may pay the broker a fee.

18           So in this case, there was a particular individual who
19 served as a broker to bring small businesses to Noah Bank to
20 get SBA loans.  What would happen then was that person was paid
21 a broker fee for his work in connection with the brokering
22 activity and had an arrangement, a secret arrangement, with the
23 defendant in which a portion of that broker fee would be kicked
24 back as a bribe to the defendant to be able to continue to do
25 business with the bank.

1      This occurred both in connection with loans, SBA
2 loans, in which the person, the individual at issue, did
3 in fact perform broker work, but also it occurred in connection
4 with SBA loans where the individual did not perform any broker
5 work.  The loan documentation was made to look like there was a
6 broker involved in the transaction.
7      In those cases, the bank would issue a broker's fee,
8 and the individual would pay the defendant a portion of that
9 broker fee, again, as a bribe or a kickback.  So those are sort
10 of the main schemes that are involved.
11      Then the indictment that we have charges four counts.
12 The first is conspiracy to commit wire fraud affecting a
13 financial institution.  And that just, as a general matter,
14 involves causing the SBA to guarantee loans and concealing the
15 fact that those loans were issued in violation of SBA rules and
16 regulations.
17      The second count charges conspiracy to commit bank
18 bribery.  And this involves the agreement to accept the
19 kickback or the bribe payment from that individual who was
20 receiving broker fees.
21      The third is a substantive bank bribery count.  And
22 the fourth count is theft embezzlement or misapplication by a
23 bank officer, again involving the broker activity.  So those
24 are the four counts that we have in the indictment now.
25      I will add that I would say sometime within the next

30 days, the government intends to supersede the indictment to add an additional count or counts involving bank fraud and conspiracy to commit bank fraud. Like I said, we expect to do that in the next several weeks.

Unless the Court has questions, I can turn to discovery.

THE COURT: Thank you.

Let me ask, with respect to the anticipated superseding indictment, do you anticipate that the government will be adding defendants?

MS. LaMORTE: No, your Honor.

THE COURT: Thank you.

Does the potential additional charge affect your expectations regarding the discovery that the government will be producing?

MS. LaMORTE: Only minimally, if at all.

THE COURT: Thank you.

Please go ahead. I would like to hear from you about your expectations regarding the scope and nature of discovery here.

MS. LaMORTE: Sure, your Honor.

So the discovery is voluminous I will say. We have about 11 gigabytes that we are about to be ready to produce to the defendant, either by the end of this week or early next week. That's about I believe 80,000 pages or so. So there are

1  thousands of documents involved.

2      A lot of these documents we obtained from Noah Bank.
3  So there are a lot of documents that pertain to a count
4  information from various individuals and entities that we named
5  for whose account statements and other information we wanted.

6      There are a number of loan files that are involved
7  with respect to the various loans that we contend are
8  problematic.  We have communications relating to these loan
9  entities and individuals.  So email communications and
10 communications with the SBA.

11     Then finally we have -- again, this is the bucket of
12 information from the bank.  We have SBA forms, documents, and
13 communications between the bank and the SBA.

14     There are two warrants that are at issue in this case.
15 One, we obtained a warrant for the defendant's Hotmail account
16 for a finite period of time.  So we will produce obviously that
17 warrant affidavit and all of the emails that we obtained from
18 that warrant.

19     And then the second, we executed a search warrant on
20 the defendant's business office and the bank.  And from there,
21 we obtained I want to say approximately ten boxes of hard-copy
22 files, as well as imaged the defendant's business computer.  So
23 all of that obviously will also be provided to the defendant.

24     Then finally, the last bucket of discoverable
25 information is from subpoena returns from phone companies and

1  other banks.  So some of our entities and individuals also

2  banked at other institutions.  And we obtained that banking

3  information.

4              THE COURT:  Thank you.

5              I understand that the government has imaged the

6  defendant's computer and seized other records.

7              At what point do you expect that you will be

8  identifying to the defense the documents or records that you

9  believe are responsive to the warrant?

10             MS. LaMORTE:  One moment, your Honor.

11             THE COURT:  Thank you.

12             (Government counsel conferred)

13             MS. LaMORTE:  Your Honor, with respect to the warrant

14 we executed for the email, we are prepared to do that

15 immediately in terms of identifying what is responsive to the

16 warrant.

17             For the documents and the computer that we seized from

18 the business office, we're going to need a bit more time.  It's

19 primarily logistical.  So for those boxes, we had to send them

20 out to a vendor to get uploaded and then scanned and then put

21 into a relativity database for the privilege review that is

22 happening.  So I would say 30 days for that.

23             THE COURT:  Thank you. Good.  That's very helpful.

24             Counsel for defendant, you've heard the government's

25 expectations regarding timing for production of the broad swath

1   of discovery, as well as identification of the specific records

2   that they assert are responsive to the warrant.

3            Given that schedule for production of discovery which

4   I expect the government will meet, what's your proposal

5   regarding next steps in the case?

6            MR. BRICKFIELD:  Your Honor, I think we're going to

7   need probably at least 90 days to review this.  I don't know if

8   the 80,000 is the total amount of pages or just not counting

9   the emails and search warrants and the boxes from my client's

10  office.

11           So even 80,000 is a quite substantial number.  And

12  obviously we have an obligation to review each and every

13  document.  I imagine many of them are not particularly

14  relevant, but I would say we're going to need at least 90 days

15  from receipt of all these documents to do a review of them.

16           THE COURT:  Thank you.

17           So your proposal then is that we have a separate

18  conference in approximately four months from now at which point

19  you anticipate that you will have completed your review of the

20  discovery and will be prepared to talk to the Court and the

21  government about a motion schedule?

22           MR. BRICKFIELD:  I don't want to commit to that, that

23  it will be done in 90 days. Again, I haven't seen a single

24  document yet.  Assuming that it's in that range, it may take

25  longer than that.

1            I think we can set, if your Honor wishes, a conference

2   in four months.  I guess I can advise the Court along the way

3   the progress we're making because that is a lot of documents.

4            My last case had 75,000 documents.  That took the

5   entire summer for my office to review.  So I'm thinking three

6   months for 80,000 documents.  Again, I don't want to be locked

7   into a 90-day schedule when I haven't seen a single document

8   yet.  That's what I'm trying to say.

9            THE COURT:  Thank you.  Good.

10           I understand that the defense is asking for

11  approximately 90 days following the production of the records

12  to the defense.  I understand that the government will have

13  completed that work no later than 30 days from now.

14           As a result, I'm going to propose to grant the

15  defendant's request and to schedule a conference for

16  approximately four months from now.  My hope and expectation is

17  that by that point, the defense will have had the opportunity

18  to review the discovery that's been produced and it will be in

19  a position at that conference to set a motion schedule and

20  potentially a trial schedule as appropriate.

21           If any party believes that an adjournment is

22  warranted, you should make a request for one in accordance with

23  my individual rules of practice in criminal cases.

24           Counsel for defendant, is that an acceptable

25  construction of your request?

1           MR. BRICKFIELD:  Yes.  Thank you, your Honor.

2           THE COURT:  Good.  Thank you.

3           Counsel for the United States, what's your view
4  regarding that proposal?

5           MS. LaMORTE:  The United States has no objection to
6  that proposal, your Honor.

7           THE COURT:  Thank you very much.

8           So I'll set a date approximately four months from now,
9  at which point I expect that the defense will be prepared to
10 tell me what motions the defendant is contemplating.  We'll
11 then set a motion schedule, a hearing schedule if necessary,
12 and possibly a trial date.

13          Again, to the extent that a party believes that an
14 additional period of time is warranted, you should feel free to
15 reach out to the Court to request an extension of time in
16 accordance with my individual rules.

17          Mr. Daniels, can you please propose a date.

18          THE DEPUTY CLERK:  Tuesday, December 17, at 4:00 p.m.

19          THE COURT:  Thank you.

20          MR. BRICKFIELD:  Judge, I'm going to be away that day.
21 I'm sorry.

22          THE COURT:  That's fine.  Do you have a preferred
23 alternative date later that week?

24          MR. BRICKFIELD:  I'm going to be away that whole week,
25 your Honor.  Sorry.

1              THE COURT:  Thank you.
2              THE DEPUTY CLERK:  Tuesday, January 7 at 10:00 a.m.
3              THE COURT:  Thank you.
4              Counsel, does that date and time work for each of the
5      parties?
6              First counsel for the United States.
7              MS. LaMORTE:  Yes, your Honor.  It does.
8              THE COURT:  Good.  Thank you.
9              Counsel for defendant?
10             MR. BRICKFIELD:  May I just have a moment?
11             THE COURT:  That's fine.
12             MR. BRICKFIELD:  Yes.  That day is fine.  Thank you,
13     your Honor.
14             THE COURT:  Good.  Thank you very much.
15             So I'm scheduling our next conference on that date at
16     that time.
17             Is there any other issue that we should take up, apart
18     from the speedy trial clock?
19             Counsel for the United States?
20             MS. LaMORTE:  Not apart from the speedy trial clock.
21             THE COURT:  Thank you.
22             Counsel for the defendant.
23             MR. BRICKFIELD:  Yes, your Honor.  Just two matters
24     briefly.
25             THE COURT:  Please.

1           MR. BRICKFIELD:  The first is I had sent the
2    government on August 5, which was several days after the
3    arraignment, a request for a bill of particulars as the
4    government has advised me in various meetings that they believe
5    there are 24 to 30 loans.  But the indictment does not specify
6    any loans by name or particularity.
7           I understand from the government, when I spoke to them
8    yesterday, that they will be superseding.  I don't know if that
9    information will be revealed.  So I'd like to reserve the right
10   under Rule 7(f) to file a motion for a bill of particulars
11   after the receipt of the superseding indictment.
12          The rule requires it to be 14 days after arraignment
13   or such other time as the Court permits.  I think this is a
14   case where a bill of particulars, perhaps after discovery and
15   the superseding indictment, would make more sense because I
16   think there is nothing in the indictment itself that indicates
17   which particular loans allegedly there were kickbacks on and so
18   on and so forth.
19          I did send them the letter.  That's what they
20   responded to me.  I'm asking the Court for leave to file that
21   motion, if necessary, at a later date.
22          THE COURT:  Thank you.
23          Counsel for the United States, let me hear from you,
24   and then I'll comment.
25          MS. LaMORTE:  Sure, your Honor.  I believe that the

bill of particulars that the defendant had submitted to us will in fact be moot upon the time that we supersede.

I understand in many cases where we receive a bill of particulars, we will work with the defendant to discuss and discuss sort of the scope of the case and which loans are at issue and issues like that.

So we anticipate that once we supersede, in the event that the defense provides us with another letter, we will endeavor to confer with the defense on the various issues such as the loans that are at issue.

THE COURT:  Good.  Thank you very much.

So I hope that the parties will continue to discuss this issue.  I understand that the government's superseding indictment may provide additional detail.

In any event, to directly address the defendant's request here, I am happy to entertain an application for a bill of particulars that would be made in conjunction with the other Rule 12 motions.

I expect that we'd set a briefing schedule for any application of a bill of particulars at our next conference and that I would take up any such application then.

So with respect to the referenced 7(f), I'm granting you leave to file such a bill of particulars in conjunction with the other Rule 12 motions that I expect we will be scheduling at our next conference.

1          MR. BRICKFIELD:  Thank you, your Honor.

2          THE COURT:  Good.  Thank you.

3          MR. BRICKFIELD:  Your Honor, just one additional
4  matter, which I've also discussed this with the government.  My
5  client on his conditions of release -- his travel is restricted
6  to the Southern District of New York, the Eastern District, and
7  the Eastern District of Pennsylvania where he resides with his
8  wife.

9          He has a daughter who attends Penn State.  That's in
10 the Middle District of Pennsylvania.  I've asked the government
11 if they would consent to my request to have travel there.  I
12 believe they have consented to that.

13         When I spoke with his pretrial officer, Carrie Foster,
14 who is in Philadelphia, she said, why don't you see if the
15 judge will give him permission to travel throughout the
16 United States with permission from pretrial without having to
17 come back and add this district or that district, as my client
18 has lost his job at the bank following his indictment and is
19 hopeful to engage in some consulting business and may need to
20 travel around the United States.

21         So I asked the United States what their position was
22 on that, and they said they were going to advise me today.

23         THE COURT:  Thank you.  Give me a moment, please.

24         (Pause)

25         THE COURT:  Counsel, first, thank you very much.  I

1     will hear from the United States momentarily.

2              I don't have a copy of the defendant's pretrial

3     services report that was presented to the magistrate judge.

4              Do either of the parties have it with them?

5              MS. LaMORTE:  We're not permitted to retain a copy,

6     your Honor.

7              MR. BRICKFIELD:  They collect them at the end of the

8     hearing.

9              THE COURT:  Given that I don't have that information

10    available, I'm going to decline to take action with respect to

11    this request at this time.  I will happily entertain an

12    application from the defendant with respect to potential

13    modification of the terms of his pretrial release.  I need to

14    review additional information in order to make a determination

15    that such a blanket permission for travel is warranted here.

16             With respect to the request that the defendant be

17    permitted to travel to the Middle District of Pennsylvania to

18    visit his daughter at Penn State, can I ask:  How frequent do

19    you anticipate that travel to be?

20             MR. BRICKFIELD:  Just a moment, your Honor.

21             THE COURT:  Thank you.  Please take your time.

22             (Defendant and counsel conferred)

23             MR. BRICKFIELD:  My client indicates that would be

24    approximately once a month, your Honor.

25             THE COURT:  Once a month?

1              MR. BRICKFIELD:  Yes.

2              THE COURT:  Thank you.

3              Counsel for the --

4              MR. BRICKFIELD:  She's a senior at the school, and she
does have certain conditions resulting from an assault that she
suffered at the school.  So her parents keep her close, and
they'd like to be able to go see her on a regular basis.

8              THE COURT:  Thank you.  I'm sorry to hear that.

9              Counsel for the United States, what's the government's
position regarding the defendant's request that I modify the
conditions of his pretrial release to permit him to travel to
the Middle District of Pennsylvania?

13             MS. LaMORTE:  The government does not object to that,
so long as there's advance notice provided to pretrial and the
government before each particular visit.

16             THE COURT:  Thank you.  Fine.

17             I will modify the defendant's conditions of pretrial
release to permit the defendant to travel to the Middle
District of Pennsylvania, provided that he provides prior
notice to his pretrial services officer and the pretrial
services officer is also alerted when he returns to one of the
already permitted districts, namely, the Eastern District of
Pennsylvania, the Southern District of New York, and the
Eastern District of New York.

25             So, again, I'll modify the conditions of the

1  defendant's pretrial release to permit him to travel to the
2  Middle District of Pennsylvania with the prior approval of his
3  pretrial services officer.
4            I understand that his pretrial supervision is being
5  supervised in the Eastern District of Pennsylvania and they
6  will be able to communicate with him regarding any potential
7  travel there.
8            To the extent that the defendant has an application
9  for a broader extension of his opportunity to travel
10 nationwide, you should make a written application to the Court
11 providing the position of the pretrial services office and the
12 United States.  And I'll evaluate that request after reviewing
13 the information prepared by pretrial services.
14           Good.  Anything else that we should take up now?
15 Counsel for defendant?
16           MR. BRICKFIELD:  No.  Thank you for your time,
17 your Honor.
18           THE COURT:  Thank you.
19           Counsel for the United States, is there an application
20 with respect to the speedy trial clock?
21           MS. LaMORTE:  Yes, your Honor.  The government would
22 move to exclude time between today and the next conference.
23 The reason we would do that is given the voluminous nature of
24 the discovery and the time that the defendant will require to
25 review it and to determine what motions he may have, the ends

1  of justice served by the continuance outweigh the defendant's

2  right and the public's interest in a speedy trial.

3           THE COURT:  Thank you.

4           Counsel for the defendant, what's your position?

5           MR. BRICKFIELD:  We consent to that, your Honor.

6  Thank you.

7           THE COURT:  Thank you.

8           I will exclude time from today until January 7, 2020.

9  After balancing the factors specified in 18 U.S. Code, Section

10 3161(h)(7), I find that the ends of justice served by excluding

11 such time outweigh the interests of the defendant and the

12 public in a speedy trial because it will provide time for

13 production of the voluminous discovery and review of those

14 materials by the defendant and also because it will allow the

15 defendant time to consider and prepare any motions, as well as

16 for the parties to continue to discuss a potential issue

17 related to motion practice regarding a bill of particulars.

18          Good.  Anything else that we should take up before we

19 adjourn?  Counsel for the United States?

20          MS. LaMORTE:  No, your Honor.

21          THE COURT:  Good.  Thank you.

22          Counsel for the defendant?

23          MR. BRICKFIELD:  No, your Honor.  I just wanted to

24 explain briefly that I had explained to my client the speedy

25 trial.  He has consented to that exception and also just to

1    note that we have entered pleas of not guilty.

2             I'm not going to go through the government's version

3    of the offense, but those are merely allegations.  And

4    obviously my client maintains his innocence in this particular

5    case.

6             THE COURT:  Understood.  Good.  Thank you very much.

7    This proceeding is adjourned.

8             (Adjourned)