UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - x
                         :

UNITED STATES OF AMERICA     :
                         :
         - v. -          :   **SUPERSEDING INDICTMENT**
                         :
EDWARD SHIN,             :   S1 19 Cr. 552 (GHW)
     a/k/a "Eungsoo Shin,"   :
                         :
        Defendant.        :
                         :
- - - - - - - - - - - - - - - - x

## COUNT ONE
### (Conspiracy to Commit Bank Fraud and Wire Fraud Affecting a Financial Institution)

The Grand Jury charges:

### Relevant Background

1.    At all times relevant to this Indictment, EDWARD SHIN, a/k/a "Eungsoo Shin," the defendant, was the CEO of an FDIC-insured financial institution headquartered in Elkins Park, Pennsylvania with offices in New York, New Jersey, and Pennsylvania (the "Bank"). The Bank offered a range of financial products to individual consumers and businesses including the provision of commercial loans, some of which were guaranteed by the U.S. Small Business Administration (the "SBA").

2.    The SBA helps Americans start, build, and grow businesses by, among other efforts, offering a variety of loan programs to help businesses succeed. While the SBA does not

lend money directly to entrepreneurs to start or grow a business, the SBA guarantees at least some of the losses lenders may incur when such loans are not repaid, provided the lender has complied with SBA loan program requirements, including relevant statutes, regulations, and the SBA's publicly available Standard Operating Procedures ("SOPs").

3.     One such loan program is SBA's 7(a) Loan Program (the "7A Loan Program"), a program for helping start-up and existing small businesses by providing guarantees on loans made for a variety of business purposes, such as purchasing new land, purchasing or expanding an existing business, and purchasing machinery, furniture, fixtures, supplies, or materials. The SBA may delegate authority to issue such loans to "preferred lenders" pursuant to the SBA's "Preferred Lenders Program" or "PLP." Lenders operating pursuant to a grant of PLP authority ("PLP lenders") may issue SBA-guaranteed loans without needing to provide documents to, or receive authorization from, the SBA for each individual loan. PLP lenders are responsible for confirming that all PLP loan closing decisions are correct, and that the PLP lender has complied with all requirements of law and SBA regulations. At all times relevant to this Indictment, the Bank was a PLP lender that engaged in the issuance of SBA-guaranteed loans.

4.     The SBA's SOPs include numerous rules and guidance

2

concerning the issuance of SBA loans. For example:

a.   Pursuant to the SBA's SOPs, an SBA lender, including but not limited to its officers and directors, is not permitted to have any real or apparent conflicts of interest with any borrower. Such a conflict of interest includes any instance in which the lender, or any of its associates, partners, or close relatives thereof, has a direct or indirect financial interest in the borrower. If such a conflict of interest exists, the SBA will not guarantee the loan.

b.   Pursuant to the SBA's SOPs, an SBA lender is required to assess the appropriate amount of equity that a borrower is required to have in the small business receiving an SBA loan. This equity is often referred to an "equity injection" or "cash injection" and is important to ensuring the long-term viability of the borrower. Equity injections are particularly important for new businesses and typically take the form of cash. Under the SOPs, an SBA lender must disclose to the SBA, and get SBA approval for, any loan extended to the borrower that is used to fund the equity injection for an SBA loan. The failure to disclose such an equity injection loan or inadequate equity by the borrower may cause the SBA not to guarantee a loan.

c.   Pursuant to the SBA's SOPs, an SBA lender may only permit the payment of broker fees in connection with SBA

3

loan funds that are reasonable and customary for the services actually performed and may not be a percentage of the loan. Such broker fees must also be disclosed to the SBA. Failure to disclose a broker fee or the payment of such fees that do not comport with the SOPs may cause the SBA not to guarantee a loan.

## The Scheme

5.      From at least in or about 2009 through at least in or about 2013, EDWARD SHIN, a/k/a "Eungsoo Shin," the defendant, engaged in a scheme to cause the Bank to issue both SBA and non-SBA loans under false and fraudulent pretenses. As part of the scheme, SHIN caused the Bank to issue loans that were fraudulent in at least three ways, described more fully below. The loans involved fraud on the SBA in connection with SBA-guaranteed loans, fraud on the Bank in connection with commercial loans, or both.

*SHIN Caused the Bank to Issue SBA-Guaranteed and Commercial Loans Involving Secret, Undisclosed Conflicts of Interest*

6.      EDWARD SHIN, a/k/a "Eungsoo Shin," the defendant, caused the Bank to issue SBA-guaranteed loans to businesses in which SHIN had a secret, undisclosed financial interest in the borrower. SHIN hid these secret interests from the Bank and the SBA in order to cause the Bank to issue the loan and to ensure that the SBA provided a guarantee for some or all of the loan. In fact, however, and as SHIN well knew, the SBA would not have

4

guaranteed the loans had the conflicts of interest been known to
it.

a.     For example, between in or about 2009 and in or
about 2013, SHIN and a co-conspirator not named as a defendant
herein ("CC-1"), a close personal friend of Shin, partnered to
purchase and operate a small business located in New York, New
York ("Borrower-1").  On or about May 31, 2009, SHIN caused the
Bank to issue an SBA-guaranteed loan for approximately $1
million to fund the purchase and establishment of Borrower-1 by
SHIN and CC-1.  At no time did SHIN disclose to the Bank or the
SBA that he was a partner in the business of Borrower-1.

b.     Later, in or about the summer of 2013, SHIN
arranged for Borrower-1 to be sold to a close relative of SHIN
(the "Relative").  In order to enable the Relative to purchase
Borrower-1, SHIN assisted the Relative in forming a company
("Borrower-2") and in or about September 2013, arranged for the
Bank to issue an SBA-guaranteed loan to Borrower-2 for
approximately $1 million to buy Borrower-1.  A significant
portion of the loan proceeds from that loan were used to pay off
the outstanding balance of the Bank's loan to Borrower-1.  At no
time did SHIN disclose to the Bank or the SBA that Borrower-2
was owned by SHIN's close relative, or that the proceeds of the
loan to Borrower-2 would be used to pay off an outstanding loan
to Borrower-1 in which SHIN held a financial interest.

c.    As further described below, in order to help the Relative obtain the loan to Borrower-2, SHIN also assisted the Relative in artificially inflating the Relative's assets in statements provided to the Bank and the Bank's loan officers in order to make it appear as if the Relative had more assets and was therefore more creditworthy than the Relative really was.

d.    Ultimately, in or about 2017, the Relative and Borrower-2 were unable to repay the loan to the Bank and defaulted, requiring the Bank to call upon the guarantee from the SBA.  Had the SBA been informed about SHIN's undisclosed conflicts of interest and the actual circumstances of the loans to Borrower-1 and Borrower-2, the SBA would not have guaranteed those loans.

*SHIN Caused the Bank to Issue SBA-Guaranteed Loans In Violation of SBA Equity Injection Rules*

7.    EDWARD SHIN, a/k/a "Eungsoo Shin," the defendant, caused the Bank to issue SBA-guaranteed loans without proper equity injections as required by the SBA's rules and regulations.  SHIN knowingly caused the Bank to issue loans to borrowers who did not have sufficient equity injections. SHIN also knowingly causing the Bank to issue loans in order to provide borrowers of SBA-guaranteed loans with equity injections, which loans were undisclosed to the SBA.

a.    For example, in connection with the approximately

6

$1 million SBA loan to Borrower-2 described in paragraph 6.b. above, SBA documentation provided that Borrower-2 would have to make a $180,000 cash injection into its business and use those funds as part of the purchase of Borrower-1. At the time, neither Borrower-2, nor its owner, the Relative, had sufficient funds to make such a cash injection. Instead, on or about June 10, 2013, SHIN provided the Relative with a check for $250,000, which the Relative then deposited into the Relative's personal bank account. At SHIN's direction, the Relative provided personal bank statements to the Bank reflecting the $250,000 balance in order to falsely convey that the Relative and Borrower-2 were capable of making the cash injection as required by the SBA. In fact, however, and as SHIN well knew, the Relative had no intention to, and did not, advance any cash into Borrower-2. Had the SBA been informed about the true facts and circumstances of Borrower-2's inability to fund a cash injection, the SBA would not have guaranteed the loan to Borrower-2.

*SHIN Received Secret, Undisclosed Kickbacks in Connection with SBA-Guaranteed and Commercial Loans Issued by the Bank*

8.    EDWARD SHIN, a/k/a "Eungsoo Shin," the defendant, secretly and unbeknownst to the SBA and the Bank arranged to receive kickbacks in connection with commercial loans issued by the Bank. These kickbacks were taken out of certain of the

broker or commission fees that were paid to CC-1, who, at all times relevant to this Indictment, worked as a business broker linking the Bank to potential borrowers. SHIN directed that these broker fees be paid to CC-1 whether or not CC-1 had done any actual work in connection with the issuance of these loans. At SHIN's direction, CC-1 would then provide a portion of the broker fee to SHIN in cash or to a third party at SHIN's direction.

a. For example, on or about April 17, 2012, the Bank disbursed an SBA-guaranteed loan for $5,000,000 to a small business entity located in New York, New York ("Borrower-3"). CC-1 had no involvement in the loan or the underlying transaction for which the funds were borrowed. Nevertheless, SHIN instructed that a commission check for $50,000, or 1% of the loan, be issued to a company controlled by CC-1 (the "Realty Company") purportedly as a "referral fee." On or about April 25, 2012, CC-1 deposited this commission check into the Realty Company's bank account.

b. On or about April 26 and 30, 2012, at SHIN's direction, CC-1 prepared two checks from the Realty Company's bank account. The first check was for approximately $17,000 and was written to another company that CC-1 had previously helped to obtain an SBA-guaranteed loan from the Bank. The owner of that company gave CC-1 $17,000 in cash in exchange for the

8

check. At SHIN's direction, CC-1 then provided $10,000 of the cash to SHIN and kept $7,000. CC-1 then signed the second check and gave it to SHIN. The second check was subsequently made out to an associate of SHIN for $30,000.

        c. In total, SHIN and CC-1 split hundreds of thousands of dollars of commission fees in this manner unbeknownst to the SBA or the Bank.

## Statutory Allegations

9. From at least in or about 2009 through at least in or about 2013, in the Southern District of New York and elsewhere, EDWARD SHIN, a/k/a "Eungsoo Shin," the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit (a) bank fraud, in violation of Title 18, United States Code, Section 1344; and (b) wire fraud affecting a financial institution, in violation of Title 18, United States Code, Section 1343.

10. It was a part and an object of the conspiracy that EDWARD SHIN, a/k/a "Eungsoo Shin," the defendant, and others known and unknown, willfully and knowingly would and did execute and attempt to execute a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property

owned by, and under the custody and control of, said financial institution, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344, to wit, SHIN fraudulently caused the Bank to issue loans by providing the Bank with false and misleading information regarding, and by omitting material facts pertaining to, the financial circumstances of borrowers applying for, and SHIN's own interests in the extension of, those loans.

11.   It was a further part and an object of the conspiracy that EDWARD SHIN, a/k/a "Eungsoo Shin," the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, which violation would and did affect a financial institution, to wit, SHIN fraudulently caused the Bank to issue, and the SBA to guarantee, loans by providing false and misleading information about the loans thereby subjecting the Bank to the loss and potential loss of the SBA's guarantees.

10

(Title 18, United States Code, Section 1349.)

## COUNT TWO
### (Conspiracy to Commit Bank Bribery)

The Grand Jury further charges:

12.    The allegations contained in paragraphs 1 through 8 and 15 of this Indictment are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

13.    From at least in or about 2009 through at least in or about 2013, in the Southern District of New York and elsewhere, EDWARD SHIN, a/k/a "Eungsoo Shin," the defendant, and others known and unknown, willfully and knowingly, combined, conspired, confederated, and agreed together and with each other to solicit things of value as a bank officer, in violation of Title 18, United States Code, Section 215(a)(2).

14.    It was a part and object of the conspiracy that EDWARD SHIN, a/k/a "Eungsoo Shin," the defendant, and others known and unknown, being officers, directors, employees, and agents of a financial institution, would and did corruptly solicit and demand for the benefit of a person, and corruptly accept and agree to accept, things of value exceeding $1,000 from a person, intending to be influenced and rewarded in connection with business and transactions of such institution, in violation of Title 18, United States Code, Section 215(a)(2).

## Overt Acts

15.  In furtherance of the conspiracy and to effect the
illegal object thereof, the following overt acts, among others,
were committed and caused to be committed in the Southern
District of New York and elsewhere:

a.  In or about April 2012, EDWARD SHIN, a/k/a
"Eungsoo Shin," the defendant, caused the Bank to issue a
commission check for approximately $50,000 made out to the
Realty Company, located in New York, New York, in connection
with an SBA loan extended by the Bank and for which no services
warranting the payment of a commission were performed by the
Realty Company or any of its principals or agents.

b.  In or about April 2012, SHIN caused the Bank to
issue a commission check for approximately $15,500 made out to
the Realty Company in connection with an SBA loan extended by
the Bank and for which no services warranting the payment of a
commission were performed by the Realty Company or any of its
principals or agents.

c.  In or about July 2012, SHIN attempted to use a
$50,000 check drawn on the Realty Company, representing an
undisclosed kickback to SHIN, at a casino in Las Vegas.

(Title 18, United States Code, Section 371.)

12

## COUNT THREE
### (Bank Bribery - Solicitation and Acceptance)

The Grand Jury further charges:

16. The allegations contained in paragraphs 1 through 8 and 15 of this Indictment above are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

17. From at least in or about 2009 through at least in or about 2013, in the Southern District of New York and elsewhere, EDWARD SHIN, a/k/a "Eungsoo Shin," the defendant, being an officer, director, employee, and agent of a financial institution, corruptly solicited and demanded for the benefit of a person, and corruptly accepted and agreed to accept, things of value exceeding $1,000 from a person, intending to be influenced and rewarded in connection with any business and transaction of such institution, to wit, SHIN, while acting as CEO of the Bank, secretly solicited and accepted payments in connection with the extension of SBA and commercial loans by the Bank.

(Title 18, United States Code, Sections 215(a)(2) and 2.)

## COUNT FOUR
### (Theft, Embezzlement, or Misapplication by Bank Officer)

The Grand Jury further charges:

18. The allegations contained in paragraphs 1 through 8 and 15 of this Indictment above are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

13

19. From at least in or about 2009 through in or about 2013, in the Southern District of New York and elsewhere, EDWARD SHIN, a/k/a "Eungsoo Shin," the defendant, being an officer, director, agent and employee of a bank the deposits of which were then insured by the Federal Deposit Insurance Corporation, with intent to injure and defraud such insured bank, embezzled, abstracted, purloined and willfully misapplied moneys, funds, and credits of such bank, and moneys, funds, assets and securities intrusted to the custody and care of such bank and the custody and care of such agent, officer, director, and employee, to wit, SHIN, while acting as CEO of the Bank, caused the Bank to issue purported broker commission payments to CC-1, including in cases where CC-1 had not earned such payments, and secretly directed CC-1 to share a portion of those payments with SHIN.

(Title 18, United States Code, Section 656.)

## COUNT FIVE
## (Conspiracy to Commit Loan Fraud)

The Grand Jury further charges:

20. The allegations contained in paragraphs 1 through 8 and 15 of this Indictment are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

21. From at least in or about 2009 through at least in or about 2013, in the Southern District of New York and elsewhere,

14

EDWARD SHIN, a/k/a "Eungsoo Shin," the defendant, and others
known and unknown, willfully and knowingly, combined, conspired,
confederated, and agreed together and with each other to commit
loan fraud, in violation of Title 18, United States Code,
Section 1014.

22. It was a part and object of the conspiracy that EDWARD
SHIN, a/k/a "Eungsoo Shin," the defendant, would and did
knowingly make false statements and reports for the purpose of
influencing in any way the action of the Small Business
Administration in connection with any provision of the Small
Business Investment Act of 1958 and an institution the accounts
of which were then insured by the Federal Deposit Insurance
Corporation, upon applications, commitments, loans, and
applications for guarantees, in violation of Title 18, United
States Code, Section 1014.

## Overt Act

23. In furtherance of the conspiracy and to effect the
illegal object thereof, the following overt act, among others,
was committed and caused to be committed in the Southern
District of New York and elsewhere:

a. In or about September 2013, EDWARD SHIN, a/k/a
"Eungsoo Shin," the defendant, falsely represented the
Relative's net worth and Borrower-2's equity injections in
connection with the issuance of an SBA loan to Borrower-2.

15

(Title 18, United States Code, Section 371.)

## FORFEITURE ALLEGATION

24.  As a result of committing the offenses alleged in
Counts One through Five of this Indictment, EDWARD SHIN, a/k/a
"Eungsoo Shin," the defendant, shall forfeit to the United
States, pursuant to Title 18, United States Code, Section
982(a)(2)(A), any and all property constituting, or derived
from, proceeds obtained directly or indirectly, as a result of
the commission of said offenses, including but not limited to a
sum of money in United States currency representing the amount
of proceeds traceable to the commission of said offenses.

### Substitute Assets Provision

25.  If any of the above-described forfeitable property, as
a result of any act or omission of the defendant:

a.  cannot be located upon the exercise of due
diligence;

b.  has been transferred or sold to, or deposited
with, a third party;

c.  has been placed beyond the jurisdiction of the
court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which
cannot be divided without difficulty;

16

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant, up to the value of the above forfeitable property.

> (Title 18, United States Code, Section 982;
> Title 21, United States Code, Section 853; and
> Title 28, United States Code, Section 2461.)

Foreperson

GEOFFREY S. BERMAN
United States Attorney

17

Form No. USA-33s-274 (Ed. 9-25-58)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA**

v.

**EDWARD SHIN,**
**a/k/a "Eungsoo Shin,"**

Defendant.

**SUPERSEDING INDICTMENT**

S1 19 Cr. 552 (GHW)

(18 U.S.C. §§ 1349, 371, 215, 656, 1014
and 2.)

GEOFFREY S. BERMAN
United States Attorney

Superseding Indictment

Stewart D. Aaron
USMJ