UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

EDWARD SHIN,
    a/k/a "Eungsoo Shin,"

       Defendant.

S1 19 Cr. 552 (GHW)


**THE GOVERNMENT'S RESPONSE IN OPPOSITION
TO THE DEFENDANT'S MOTIONS *IN LIMINE*** 


                   AUDREY STRAUSS
                   Acting United States Attorney for the
                   Southern District of New York
                   One St. Andrew's Plaza
                   New York, New York 10007

Tara La Morte
Anden Chow
Assistant United States Attorneys
    *Of Counsel*

**PRELIMINARY STATEMENT**

The Government respectfully submits the memorandum of law in opposition to the defendant Edward Shin's motions *in limine*. (*See* Dkt. No. 57, "Def. Mot. in Limine"). In his motions, the defendant moves to preclude at trial the introduction of (i) information pertaining to six specific loans; and (ii) evidence pertaining to the defendant's attempt to negotiate monies from kickbacks through a casino. The Government does not intend to offer evidence regarding the six loans and so that motion should be dismissed as moot. However, for the reasons set forth below, the defendant's motions should be denied in their entirety.

**ARGUMENT**

**I. The Government does not intend to offer evidence pertaining to the six loans listed in the defendant's motion *in limine*.**

The defendant moves to preclude evidence pertaining to the following six loans:

- SBA Loan No.: 2846426009 to 115 Market Inc.

- SBA Loan No.: 9844665002 to 115 Market Inc.

- SBA Loan No.: 1966557009 to 116 West 32 Café LLC

- SBA Loan No.: 9310635010 to Kim's WWS LLC.

- SBA Loan No.: 9531135006 to Delissimo Deli Corp.

- SBA Loan No.: 1168077002 to Niobe Nails & Spa Inc.

At trial, the Government does not intend to offer evidence of the defendant's criminal conduct with respect to these six loans in its case-in-chief. Accordingly, the defendant's motion may be dismissed as moot.

1

## II. The defendant's attempt to negotiate kickback monies through a casino is highly probative and not unfairly prejudicial.

The defendant next moves to exclude as irrelevant and unfairly prejudicial evidence of his attempt to negotiate a $50,000 check drawn on a co-conspirator's ("CC-1") Realty Company at a casino in July 2012 (hereinafter the "Kickback Evidence"). Notwithstanding the Indictment's assertion that the $50,000 check represents a kickback from CC-1 to the defendant in furtherance of the defendant's bank bribery scheme, the defendant nonetheless argues that the payment is irrelevant absent direct linkage to a fraudulent loan. (*See* Def. Mot in Limine at 6-8, 10-11). This is wrong, and appears to be an effort to revisit the Court's prior ruling denying the defendant's request for a bill of particulars on this issue. As explained below, regardless of any direct linkage to a specific fraudulent loan, the Kickback Evidence is highly probative evidence of the defendant's intent, shows the defendant's actual receipt of bribe monies through the Realty Company—a key account through which this scheme operated—and additionally explains the defendant's motive for soliciting such payments. Nor is such evidence of casino gambling itself inflammatory or unfairly prejudicial; indeed, the defendant does not argue otherwise.

Count Two of the Indictment asserts, in relevant part, that the defendant, as the CEO of an FDIC-insured bank (the "Bank"), conspired with others, specifically including CC-1, to solicit and accept things of value in connection with the business and transactions of the Bank. (*See* Indictment ¶¶ 12-15). As described in the preceding paragraphs of the Indictment, among other things, the defendant illicitly directed CC-1 to pay him a portion of broker fees CC-1 received from SBA and commercial loans issued by the Bank, whether or not CC-1 actually earned those fees. These broker fees were typically issued via a commission check from the Bank, made out to one of CC-1's companies, including the Realty Company, and were deposited into the

2

corresponding CC-1 company account. The Indictment goes on to list overt acts taken in furtherance of the scheme, including the Kickback Evidence, *i.e.*, the defendant's attempted use of an undisclosed kickback in or about July 2012 at a casino in Las Vegas. (*See* Indictment ¶ 15.c.).

In the course of discovery, the Government produced documents underlying the Kickback Evidence, including a check issued to the casino from CC-1's Realty Company, as well as copies of the defendant's driver's license and guest signature card that the casino had on file for him. The defendant's casino guest account number matched the account number written in the memo portion of the check.

The defendant argues, however, that the discovery does not indicate whether the Kickback Evidence represents a prohibited kickback or bribe "for approval of a loan" as opposed to some sort of legitimate transaction, and is therefore irrelevant and prejudicial. (Def. Mot. in Limine at 7; *see also id.* at 10-11). This argument fails in several respects. First, regardless of the defendant's interpretation of discovery, the Indictment alleges that the Kickback Evidence represents an undisclosed kickback payment to the defendant, and constitutes an overt act in furtherance of the charged bribery scheme, *i.e.*, it does not reflect a legitimate business transaction. At trial, the Government intends to prove, through CC-1, other witnesses, and documentary evidence, that the defendant illicitly directed CC-1 to pay him bribes and kickbacks, including the Kickback Evidence, in violation of the law. In addition, the Government expects the evidence will show that CC-1 typically deposited commission checks from the Bank in his Realty Company account (as well as another account that he controlled), and provided the defendant with bribe and kickback payments from those accounts, oftentimes in cash. Accordingly, even apart from evidence that the Kickback Evidence in fact represents an illicit payment to the defendant in furtherance of his

3

kickback arrangement with CC-1, documentary evidence establishing the defendant's receipt and use of funds from the Realty Company account is critical evidence of the scheme and corroboration of CC-1's testimony. Second, contrary to the defendant's argument, the Indictment does not allege, and the Government need not prove, that bribes and kickbacks were paid to the defendant "for approval of a loan." This is a straw man argument designed to allow the defendant to leap to the conclusion that, absent tracing of the Kickback Evidence to a particular loan, the Kickback Evidence is irrelevant and prejudicial. The reality is that the Indictment nowhere alleges that the defendant demanded kickbacks from CC-1 in order to approve any particular loan. Indeed, the Indictment alleges, and the Government will prove, that CC-1 paid kickbacks and bribes to the defendant in connection with loans in which CC-1 had *no* involvement. The Government will show that the defendant solicited and accepted kickbacks and bribes from CC-1 to permit that arrangement to continue so that the defendant could illicitly profit.

Indeed, the defendant's effort to exclude this evidence appears to be an attempt to relitigate his motion for a bill of particulars, which this Court denied on July 24, 2020. (*See* July 24, 2020 Tr. at 39-55). In his motion, the defendant argued that the Government should be compelled to provide the identity of the borrower, entity, or loan associated with the Kickback Evidence. (*See* Dkt. No. 36-1, at 4-5, 7-8). In denying the defendant's motion, the Court repeatedly noted that it would be improper to compel the Government to preview its evidence or disclose the manner in which it would attempt to prove the charges. (*See, e.g.*, July 24, 2020 Tr. at 46, 51). The defendant's effort to exclude now the Kickback Evidence as irrelevant in light of his failure to prevail on his request for particulars fares no better, and should be swiftly rejected.

4

Finally, the Kickback Evidence is not unfairly prejudicial. Contrary to the defendant's argument, there is nothing confusing about the fact that CC-1 provided the defendant with a $50,000 check from the Realty Company account in furtherance of an ongoing kickback scheme between CC-1 and the defendant, which allowed the defendant to illicitly profit. Moreover, the Government expects CC-1 will testify regarding the circumstances of the payment, regardless of tracing it to any particular Bank loan. Finally, the Kickback Evidence is not unduly prejudicial, in that the defendant's use of bribe proceeds to gamble or pay gambling debts is not particularly inflammatory or any more inflammatory than the charged conduct; notably, the defendant does not argue otherwise.

Accordingly, the defendant's motion to exclude the Kickback Evidence should be denied.

## CONCLUSION

For the foregoing reasons, the Court should dismiss as moot the defendant's motion *in limine* regarding evidence of six loans, and deny in its entirety the defendant's motion *in limine* regarding the Kickback Evidence.

Dated: New York, New York
December 14, 2020

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York

By:   /s/
Tara La Morte
Anden Chow
Assistant United States Attorneys
Tel.: (212) 637-1041 / 2348

5