

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 22, 2021

**BY ECF**

Honorable John P. Cronan
United States District Judge
Southern District of New York
New York, New York 10007

  Re:  *United States v. Edward Shin*, S2 19 Cr. 552 (JPC)

Dear Judge Cronan:

  Defendant Edward Shin has informed the Government that he seeks to introduce evidence of an October 3, 2018 meeting (the "2018 Meeting") between Shin and a cooperating witness (hereinafter "CW-1"), including self-serving exculpatory statements that Shin himself made at the meeting. The 2018 Meeting was covertly recorded by CW-1.[1] The Government does not intend to offer any evidence regarding the 2018 Meeting in its case-in-chief; however, Shin apparently seeks to elicit testimony regarding the 2018 Meeting, and may seek to introduce the covert recording, during cross-examination of CW-1 and/or in the defense's case-in-chief. The law clearly precludes him from doing so.

  **A.  Relevant Facts**

  In October 2018, approximately five years after CW-1's involvement in the charged scheme, CW-1 met with Shin at the direction of the Government. Near the outset of the 2018 Meeting, Shin asked CW-1: "By any chance, is there something that you're recording now?" CW-1 responded "no," to which Shin replies: "I'm just saying that you should do it openly." Following CW-1's discussion of various rumors, Shin asked: "There must be a reason why you're here though, right? You're not just here without a reason, right?" CW-1 then raised an outstanding tax

---

[1] Both Shin and CW-1 spoke in Korean during the 2018 Meeting. The Government's certified transcription and translation of the conversation is attached hereto as Exhibit A. The defense has provided a translation to the Government for review, and there appear to be a number of discrepancies between the two translations. Moreover, the defense's certification makes clear that it applies to the translation of a Korean transcript to English; it does not appear to cover the creation of the Korean transcript from the recording. The defense's transcript is attached hereto as Exhibit B. That said, the Government does not believe that the discrepancies are at all material to resolution of this motion. A comparison of the Government's and defense's translation is attached as Exhibit C. The statements quoted in this memorandum are derived from the Government's certified transcript.

issue concerning 1797 Empire, a company in which the Government alleges Shin held an undisclosed, secret interest.  In response, Shin told CW-1 that he should be looking to the manager of the company with regards to the tax issue, and asks "Why would you come here?"  Upon elaborating, Shin stated:  "But what does that have to do with me?"  Similarly, in response to CW-1's discussion regarding Café 45, another company that the Government alleges Shin held a secret, undisclosed interest, Shin replied:  "It doesn't matter to me."  Shin went on to tell CW-1 that he should apologize for the tax issue that arose in connection with 1797 Empire; thatthe tax issue is CW-1's problem, and that CW-1 should consult a lawyer and proceed.  Further along in the conversation, Shin asked several times "Who sent you to me?" and then "Stop.  Let's stop here for today and I [Shin] will arrange a meeting separately."

In connection with more discussion referencing law enforcement's investigation and rumors concerning certain individuals, Shin told CW-1 "They probably think you know a lot of secrets about me.  But corruption, what corruption?"  He also made additional self-serving, exculpatory statements, including that:  "And you [i.e. CW-1], coming here, being investigated, those things have nothing to do to me."  Shin also told CW-1:  "They are saying, you are a witness and FBI is arresting . . . right? Oh?  Is that so?"

Finally, as relevant to this letter motion, after CW-1 told Shin that he had not been able to broker a loan since "then" [likely referring to when CW-1 and Shin had last worked together], Shin responded:  "You don't have to bring that up.  If you return to the diligent and innocent man of old, then I can do business with you, because I trust your ability, right? . . . But, today is not the time to talk about such things, right?"  Shin and CW-1 then discussed meeting in the future.

## B.  Applicable Law

A defendant's out-of-court statement is not hearsay when offered by the Government.  FED. R. EVID. 801(d)(2)(A).  A defendant, however, does not have a parallel ability to offer his own statements. *See, e.g.*, *United States v. Yousef*, 327 F.3d 56, 153 (2d Cir. 2003); *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982).  While the defendant may permissibly cross CW-1 regarding the conversations about which CW-1 testifies on direct examination, the 2018 Meeting will not be such a conversation, and, in any event, a defendant cannot introduce his own statements—either by eliciting them on cross-examination or by playing a recording during cross-examination—on the ground that they are mere "impeachment." *See, e.g.*, *United States v. Faruki*, 803 F.3d 847, 857 (7th Cir. 2015) (The defendant "was not entitled to introduce his own hearsay statements through [the witness] to 'impeach' earlier statements [the defendant] had made [to the witness] . . . .  The district court properly found that the appropriate vehicle for the introduction of such evidence would have been for [the defendant] himself to have taken the stand.").  The basis for this settled rule is simple: Were the law otherwise, a defendant "could effectuate an end-run around the adversarial process by, in effect, testifying without swearing an oath, facing cross-examination, or being subjected to first-hand scrutiny by the jury." *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005).

Nor, except in extremely limited circumstances, may a defendant introduce his own out-of-court statements as evidence of his state of mind.  To be admissible on that basis, the statement must be relevant to a *then-existing* state of mind or intent regarding a relevant fact, rather than a self-serving explanation of past events. *See, e.g.*, *United States v. Blake*, 195 F. Supp. 3d 605, 610

(S.D.N.Y. 2016) (citing *United States v. DiMaria*, 727 F.2d 265, 271 (2d Cir.1984); *United States v. Lesniewski*, No. 11 Cr. 1091, 2013 WL 3776235, at *5 (S.D.N.Y. July 12, 2013); *United States v. Blake*, 195 F. Supp. 3d 605, 610 (S.D.N.Y. 2016) . Rule 803(3)'s exception to the hearsay bar only permits the limited admission of statements of future intent, not those concerning past intent and/or motive. *Shepard v. United States*, 290 U.S. 96, 105-06 (1933); *see also, e.g.*, *United States v. Best*, 219 F.3d 192, 198 (2d Cir. 2000). "There would be an end, or nearly that, to the rule against hearsay if the distinction [between past and future intent] were ignored." *Shepard*, 129 U.S. at 105-06.

Finally, even where a declarant's out-of-court statement is not otherwise inadmissible hearsay, it "must meet the requirements of, *inter alia*, relevance, and it must not be excludable on the grounds of undue confusion or prejudice under Rule 403." *United States v. Gupta*, 747 F. 3d 111, 139 (2d Cir. 2013) (affirming preclusion of evidence that a defendant allegedly intended to give "his wealth to charity" as both inadmissible hearsay and irrelevant).

### C. Discussion

The defendant should be precluded from eliciting any testimony, or introducing any evidence, of the 2018 Meeting for at least two reasons.

*First*, Shin's statements during the 2018 Meeting are inadmissible hearsay. For the jury to rely on the statements as "evidence" of the defendant's state of mind with respect to his intent to engage in fraudulent transactions or his involvement (or lack thereof) in the charged conduct, the jury would have to *believe* the defendant's assertions on these subjects. That is the very definition of statements offered for the truth; they are inadmissible hearsay. For example, the defendant's repeated assertions that the events raised by CW-1 had nothing to do with him are relevant only if those assertions are true. So too with the other statements that Shin apparently seeks to offer. *See United States v. Dawkins*, 999 F.3d 767, 790 (2d Cir. 2021) (testimony offered by a witness that in a telephone call, the defendant had confided that he was being paid a consulting fee was held to be inadmissible: "Broughton's proffered testimony did not reflect Code's state of mind within the meaning of Rule 803(3). Rather, Code's statement regarding his relationship with LOYD was an assertion of fact."); *United States v. Mendlowitz*, No. 17 cr. 248 (VSB), 2019 WL 6977120 (S.D.N.Y. Dec. 20, 2019) (rejecting defendant's attempt to admit his own statements to then-Government cooperators concerning his involvement in past acts; statements were not probative of the defendant's state of mind at the time of the acts, and the recording was made after an audit). Shin's statements have no valid relevance for their effect on the listener (CW-1), to prove notice, knowledge, or any other valid non-hearsay purpose.

Nor are any of Shin's statements once of "future intent," as would be required for admission under Rule 803(3). The charged scheme ended years prior to this meeting, and there is otherwise nothing forward-facing about Shin's denials of his involvement in any of the past events that are relevant to this prosecution. These statements do not reflect Shin's then-existing state of mind, and accordingly do not fall within Rule 803(3)'s exception to the hearsay bar. *See United States v. Gatto*, 986 F.3d 104, 118 (2d Cir. 2021) (recorded telephone calls inadmissible as evidence of state of mind under 803(3) because the calls involved different recruits than were the subject of the case and involved conduct that occurred after the payments alleged in the indictment were made).

*Second*, even if the recording could conceivably have value for a non-hearsay pursue, Shin should be precluded from eliciting evidence regarding this conversation under Rule 403.  The conversation occurred several years after the scheme's operation.  As such, its probative value of Shin's intent while the scheme was in operation is non-existent to minimal at best.  Indeed, because Shin expressly suspected that CW-1 was a government witness, that Shin's arrest by the FBI was imminent, and that CW-1 was attempting to secretly record the conversation, Shin's denials during the conversation are plainly self-serving.  Moreover, as noted above, in order for those denials to have any probative value, the jury must believe, at least to some extent, the truth of those statements.  Under these circumstances, any minimal probative value of the 2018 Meeting is significantly outweighed by the risk that the jury, even with a limiting instruction, would consider these statements made during that meeting for their truth—i.e. for an inadmissible, hearsay purpose.

For each of the foregoing reasons, Shin should be precluded from admitting any evidence, or eliciting any testimony, regarding the 2018 Meeting.

Very truly yours,

DAMIAN WILLIAMS
United States Attorney

by: _/s/_____
Tara La Morte
Anden Chow
Jessica Greenwood
Assistant United States Attorneys
(212) 637-1041 / 2348 / 1090