

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 28, 2022

**BY ECF**

The Honorable John P. Cronan
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    *United States* v. *Edward Shin*, 19 Cr. 552 (JPC)

Dear Judge Cronan:

      The Government respectfully submits this letter to advise the Court of potential conflicts of interest presented by the representation of the defendant, Edward Shin, by Paul Brickfield Esq. of Brickfield & Donahue ("Brickfield"), and Robert James Basil of The Basil Law Group PC ("Basil"), in preparation for a hearing pursuant to United States v. Curcio, 680 F.2d 881 (2d Cir. 1982), currently scheduled for April 29, 2022.

      Brickfield and Basil represent both the defendant and, in matters unrelated to this case, previously represented Noah Bank (the "Bank")—the financial institution for which the defendant was the Chief Executive Officer during the relevant time period.  In addition, Basil currently represents the Bank in a matter that has a relation to this case. These lawyers' former representation of the Bank and Basil's current representation of the Bank could potentially cause a conflict if the defendant wishes to advance defense theories that might reflect adversely upon the Bank or if defense counsel is aware of confidential Bank information they cannot use for his defense.

      To be clear, the Government does not believe that an actual conflict exists in this case, and does not remotely doubt that defense counsel involved in this case will vigorously pursue their client's interests.  Nonetheless, given the potential conflicts at issue, the Government submits that it is important that the defendant be allocated as to his understanding of the issues and state on the record whether he waives any such conflict.

The Honorable John P. Cronan                                                                                          Page 2
April 28, 2022

## I.  Factual Background

The defendant is currently charged in a six-count superseding indictment, S3 19 Cr. 552 (JPC) (the "Indictment"), with wire fraud, bank fraud, bank bribery, embezzlement, and loan fraud offenses, in violation of Title 18, United States Code, Sections 1349, 371, 215(a)(2), and 656.  As alleged in the Indictment, the charge stemmed from the defendant's conduct in causing the Bank to issue Small Business Administration ("SBA")-guaranteed and commercial loans involving secret, undisclosed conflicts of interest; causing the Bank to issue SBA-guaranteed loans in violation of the SBA equity injection rules, and soliciting and receiving secret, undisclosed kickbacks in connection with SBA-guaranteed and commercial loans issued by the Bank, between in or about 2009 and 2013.  As a result, the Bank and SBA suffered financial losses.

The defendant is currently represented by Brickfield and Basil.  Yesterday and today the Government learned that Basil represents the Bank and the defendant in connection with litigation brought against a former Bank employee ("Employee-1") who had filed counterclaims against the Bank and Shin, and who is testifying as a witness in this case, *United States v. Shin*, 19 Cr. 552,[1] and additionally has represented the Bank in previous unrelated debt collection matters. The Government also learned that Brickfield previously represented the Bank in unrelated matters.  The Government understands from Brickfield and Basil that they each secured written waivers from the Bank in connection with their current representation of the defendant.  *See* N.Y. Rules of Prof'l Conduct 1.7 ("Notwithstanding the existence of a concurrent conflict of interest . . ., a lawyer may represent a client if . . . each affected client gives informed consent, confirmed in writing"); *id.* 1.9 ("A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."); *id.* 1.9 cmt. 3 ("[K]nowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation.").

## II.  Discussion

### A.  Applicable Law

"A defendant's Sixth Amendment right to counsel includes a right to conflict-free representation." *United States* v. *Rogers*, 209 F.3d 139, 143 (2d Cir. 2000).  To ensure that a defendant's right to conflict-free counsel is adequately safeguarded, a district court has an obligation whenever it is "sufficiently apprised of even the possibility of a conflict of interest" to initiate an inquiry and to disqualify counsel or seek a waiver from the defendant whenever the inquiry reveals that there is an actual or potential conflict of interest. *United States* v. *Levy*, 25 F.3d 146, 153 (2d Cir. 1994).  Moreover, this Court has "an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat* v. *United States*, 486 U.S. 153, 160 (1988).

When a district court is confronted with a possible conflict of interest, it must first determine whether "the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." *United States* v. *Cain*, 671 F.3d 271, 293 (2d Cir. 2012).  If the court

---

[1] Employee-1 is currently represented by separate counsel in connection with *United States v. Shin*, 19 Cr. 552, as well as in a separate federal *qui tam* action Employee-1 filed against the Bank and Shin.

The Honorable John P. Cronan                                                                                           Page 3
April 28, 2022

discovers "no genuine conflict, it has no further obligation." *United States* v. *Perez*, 325 F.3d 115, 125 (2d Cir. 2003). An actual conflict of interest exists when, "during the course of representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action," or where the attorney's representation to the defendant is "impaired by loyalty owed a former client." *United States* v. *Blau*, 159 F.3d 68, 74-75 (2d Cir. 1998) (internal citation omitted). "A potential conflict of interest exists if the interests of the defendant may place the attorney under inconsistent duties at some time in the future." *United States* v. *Kliti*, 156 F.3d 150, 153 n.3 (2d Cir. 1998).

Should the court determine that an actual conflict exists that is so severe that "no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation," then the court must disqualify counsel. *Levy*, 25 F.3d at 146, 153. Such *per se* conflicts arise in a very narrow set of circumstances, such as where trial counsel "is not authorized to practice law," where trial counsel "is implicated in the very crime for which his or her client is on trial," *Armienti* v. *United States*, 234 F.3d 820, 823 (2d Cir. 2000), or where the "actual conflict . . . is [otherwise] so severe as to indicate *per se* that the rendering of effective assistance will be impeded," *Perez*, 325 F.3d at 125; *see also United States* v. *Jones*, 381 F.3d 114, 119 (2d Cir. 2004); *Solina* v. *United States*, 709 F.2d 160, 164 (2d Cir. 1983) (unlicensed attorney); *United States* v. *Cancilla*, 725 F.2d 867, 868-70 (2d Cir. 1984) (attorney implicated in client's crime); *United States* v. *Schwarz*, 283 F.3d 76, 96-97 (2d Cir. 2002) (unwaivable conflict existed when attorney represented both police officer defendant and police union which had paid $10 million retainer to attorney).

If, however, "the court determines that the 'attorney suffers from a lesser [actual] or only a potential conflict,' then it may accept a defendant's knowing and intelligent waiver of his right to conflict-free counsel and permit the defendant to be represented by the attorney of his choice." *Perez*, 325 F.3d at 125 (quoting *Levy*, 25 F.3d at 153) (alteration in original). Conflicts "such as attorney's representation of two or more defendants or his prior representation of a trial witness, are generally waivable." *Perez*, 325 F.3d at 127. However, "such a conflict might require a defendant to abandon a particular defense or line of questioning," and to "seek the legal advice of independent counsel and make an informed judgment that balances the alteration in the trial strategy against the perceived effect of having to get a new and perhaps less effective defense counsel." *Id.* (quoting *United States* v. *Fulton*, 5 F.3d 605, 613 (2d Cir. 1993)). If the defendant "can rationally opt to retain counsel of his choice despite a conflict, the court conducts a *Curcio* hearing to determine whether the defendant knowingly and intelligently waives his right to conflict-free representation." *Perez*, 325 F.3d at 127.

The Honorable John P. Cronan	Page 4
April 28, 2022

In making a determination about whether to accept a defendant's waiver of conflict-free counsel, the district court "should address the defendant directly and determine whether he wishes to make a knowing and intentional waiver of his right to conflict-free counsel in conformity with the procedures set out in [*United States* v. *Curcio*, 694 F.2d 14, 24–25 (2d Cir. 1982)]." *Cain*, 671 F.3d at 293.  Because a defendant who chooses to waive his right to conflict-free counsel gives up important rights -- and, in certain cases, may be required to "abandon a particular defense or line of questioning," *Perez*, 325 F.3d at 127 -- the Second Circuit has prescribed in detail what procedures must be followed in a *Curcio* proceeding to effectuate the waiver:

> At such a hearing, the trial court (1) advises the defendant of his right to representation by an attorney who has no conflict of interest, (2) instructs the defendant as to the dangers arising from particular conflicts, (3) permits the defendant to confer with his chosen counsel, (4) encourages the defendant to seek advice from independent counsel, (5) allows a reasonable time for the defendant to make a decision, and (6) determines, preferably by means of questions that are likely to be answered in the narrative form, whether the defendant understands the risk of representation by his present counsel and freely chooses to run them.

*Perez*, 325 F.3d at 119.

In light of a district court's obligation to ensure that a defendant receives a fair trial, the court should conduct any necessary inquiry as to possible conflicts of interest "sooner rather than later," so that "any conflict is identified and either eliminated or knowingly and voluntarily waived pre-trial." *Rogers*, 209 F.3d at 146.  Though it is clearly preferable that such an inquiry be conducted pre-trial, at that point, it may be difficult to identify each of the "specific trial episodes in which the conflict" may come into play.  *Id.*  Indeed, in addition to making an assessment of "how serious the conflict is," the district court must also be aware "of how little can be predicted with certainty before a trial begins and [display] a sober regard for how much can go wrong once a trial starts." *United States* v. *Rahman*, 861 F. Supp. 266, 275 (S.D.N.Y. 1994).

For this reason, "where a serious potential conflict of interest exists, a trial judge has broad discretion to refuse a defendant his or her choice of counsel." *United States ex rel. Stewart* v. *Kelly*, 870 F.2d 854, 857 (2d Cir. 1989); *see also Wheat*, 486 U.S. at 164 (holding that presumption in favor of petitioner's counsel of choice "may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict"); *United States* v. *Zichettello*, 208 F.3d 72, 104 (2d Cir. 2000) (noting a district court's "substantial latitude" to require disqualification even where defendants have attempted to waive any potential conflict as long as it determines that the conflict is "severe").  Thus, "[i]n order to avoid lurking potential conflicts and to preserve the public's confidence in the integrity of the judicial system," district courts have discretion to reject a defendant's waiver of an actual or potential conflict.  *United States* v. *Oberoi*, 331 F.3d 44, 52 (2d Cir. 2003) (citing *Wheat*, 486 U.S. at 162-63); *see also United States* v. *Rogers*, 9 F.3d 1025, 1030-32 (2d Cir. 1993); *United States* v. *Locascio*, 6 F.3d 924, 931-35 (2d Cir. 1993).  Even the risk of a potential conflict becoming an actual conflict is, in certain cases, sufficient to empower the district court to decline to accept a waiver. *Jones*, 381 F.3d at 120-21; *United States* v. *Gonzales*, 105 F. Supp. 2d 220, 223 (S.D.N.Y. 2000).

       B.      The Court Should Conduct a *Curcio* Hearing

Here, a possible conflict arises from Brickfield's and Basil's representation of the defendant, their respective previous representations of the Bank on unrelated matters, and Basil's current representation of the Bank in a related matter. Based on the information available to the Government at this time, the Government does not believe that the divergent interests described above rise to the level of unwaiveable actual conflicts. However, the Government believes that there is sufficient possibility that "the interests of the defendant may place the attorney[s] under inconsistent duties at some time in the future," that the Court "has a threshold obligation to determine whether the attorney has an actual conflict, a potential conflict, or no conflict," and to "conduct a Curcio hearing to determine whether the defendant will knowingly and intelligently waive [his] right to conflict-free representation." *Kliti*, 156 F.3d at 153.5.

The defendant and the Bank's interests are potentially at odds because the defendant and the Bank may wish to make competing assertions in connection with this matter. While the "likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials," *Rahman*, 861 F. Supp. at 275, the possibility of several conflicts is already apparent. For example, the Bank has suffered financial losses in connection with several of the loans at issue in the charged offenses. The Bank may wish to argue that the defendant was the only employee with knowledge of wrongful conduct, *i.e.* a sole bad actor, while, in contrast, the defendant may wish to argue that other Bank employees were aware of potential problems regarding these loans, but failed to notify him of any issues or that the processes used by other Bank personnel to evaluate the loans, including broker commissions issued in connection with those loans, were sub-par. Similarly, were the defendant to be convicted, he may wish to argue that his underlying conduct had little or no detrimental effect on the Bank, while the Bank may wish to seek restitution. Additionally, during the course of their respective current and former representations of the Bank, Brickfield and/or Basil may have gained access to information that would be advantageous to the defendant's defense, but which (a) is protected by the attorney-client privilege between it and the Bank, and/or (b) would be damaging to the Bank were the information disclosed. In that same vein, these attorneys may be limited in its ability to cross-examine witnesses who are current or former Bank employees out of a desire not to air information that is detrimental to the Bank or, may otherwise be hesitant to present evidence that would reflect adversely on the Bank, which, for Basil, remains his client on another matter, and was formerly his and Brickfield's client on other unrelated matters.[2]

### III.    Conclusion

For the foregoing reasons, the Government respectfully requests that the Court conduct a hearing pursuant to the Second Circuit's ruling in *United States* v. *Curcio* to advise the defendant of his right to conflict-free counsel and inquire whether he understands the possible conflict. If, after being advised of the risks inherent in his continued representation by his current counsel, and having been afforded a reasonable opportunity to contemplate and process those risks, the defendant informs the Court that he wishes to proceed with this current counsel, the Government requests that the Court elicit a narrative respond from the defendant designed to ascertain whether he is fully aware of the risks involved in the representation provided by Brickfield and Basil, and to determine whether the defendant is making a knowing and intelligent waiver of his right to conflict-free representation.

---

[2] A prior representation can be grounds for disqualification where the former client objects, the matters are substantially related, and the attorney had access to or was likely to have access to privileged information. *See, e.g.*, *United States* v. *DiTomasso*, 817 F.2d 201, 219-20 (2d Cir. 1987).

The Honorable John P. Cronan  Page 6
April 28, 2022

      For the Court's convenience, the Government has enclosed a set of proposed questions to be put to the defendant as part of the *Curcio* inquiry.

                        Respectfully submitted,

                        DAMIAN WILLIAMS
                        United States Attorney for the
                        Southern District of New York

           by: /s/
                Tara M. La Morte
                Anden Chow
                Jessica Greenwood
                Assistant United States Attorneys
                (212) 637-1041/2348/1090

The Honorable John P. Cronan                                                                                          Page 10
April 28, 2022

Proposed *Curcio* Examination

*United States* v. *Edward Shin*, S3 19 Cr. 552
(JPC)

**A) <u>Introductory Questions to Establish Competence</u>**

1. Age

2. Education

3. Current medications

4. Alcohol, drugs, medications within past 24 hours

5. Is anything interfering with your ability to understand what is happening here today?

**B) <u>Satisfaction with Counsel from Brickfield and Basil</u>**

6. Are you satisfied with the services of your attorneys thus far in the case?

7. Do you understand that your lawyers have other clients whom they have obligations to?

**C) <u>Potential Conflict of Interests Posed by Brickfield's and Basil's Representations</u>**

8. Has your attorney Paul Brickfield informed you that he previously represented Noah Bank – where you were formerly CEO?  Has your attorney Robert Basil informed you that he previously represented Noah Bank?  Has Robert Basil also informed you that he currently represents Noah Bank in another matter that has some relationship with this case?

9. Has your attorney Robert Basil informed you that though he is not participating in the representation of the Bank in relation to this case, he nevertheless has ethical obligations to the Bank because he represents the Bank in another matter that has some overlapping facts as this case?  Have either of your attorneys informed you that thought they are not participating in the representation of the Bank in relation to this case, they nevertheless have ethical obligations to the Bank because of their prior representation of the Bank?

10. How long have you been aware of this issue?  How much time have you spent

The Honorable John P. Cronan  Page 11
April 28, 2022

discussing this issue with them?

11. Do you understand that the fact that your attorneys' representation of both you and the Bank may lead them to have loyalties divided between yourself and the bank?

12. Do you understand that in some cases your lawyers might have incentive to put the interest of the bank before yours?

13. Do you understand that your lawyers may have learned information in their current and former representation of the Bank on other matters, and if the Bank does not grant their permission, your lawyers would be forbidden from using this information when representing you, even if it would be helpful to your case?

14. Let me give you some examples of the ways in which the allegiance of your lawyers from could adversely affect their representation of you in this case. This representation could affect the way that your lawyers consider and advise you:

   a. Whether, and when, you should plead guilty;

   b. Whether you should seek to cooperate with the Government;

   c. What defenses you should raise;

   d. Whether you should testify at trial;

   e. Which witnesses should be cross examined, and what questions they should be asked;

The Honorable John P. Cronan                                                                                    Page 12
April 28, 2022

  f. Which witnesses should be called, and what other evidence to offer on your behalf;

  g. What arguments to make on your behalf to the jury;

  h. What arguments to make to the Court, and what facts to bring to the Court's attention, before trial, during trial, or at your sentencing.

15. Let me expand on some of those examples.

  a. Do you understand that your attorneys may not wish to take positions in this case during trial, or at sentencing that are critical of the Bank, even if criticizing the bank might help your defense?

  b. Do you understand that your attorneys may not vigorously cross-examine witnesses who are current or former employees of the Bank, should they testify at your trial, if your lawyers believe that such cross examination may be harmful to the bank's interests?

  c. Are you aware that your attorneys from may have access to or may have learned information from the Bank that may be helpful in defending you, but that they are absolutely prohibited from conveying it to you and using it to defend you without the consent of the Bank because of the attorney client privilege that applies to the communications between your attorneys and their client?

    d. Do you understand that your attorneys may be limited in making arguments about your level of involvement in the offense, role in the offense, and culpability?

    e. Do you understand each of the examples that I have given you?

16. Tell me in your own words what your understanding is of the potential conflicts of interest arising in this situation.

17. Do you understand that the greatest danger to you is in the inability to foresee all of the possible conflicts that might arise because of Basil's simultaneous representation of the Bank, on the one hand, and representation of you, on the other, and Basil's and Brickfield's respective prior representation of the Bank?

18. Do you understand that the potential conflict has existed since your lawyers began representing you?

**D) The Right to Conflict-Free Representation**

19. Do you understand that, in every criminal case, including this one, the defendant is entitled to assistance of counsel whose loyalty to him is undivided, who is not subject to any factor that might in any way intrude upon an attorney's loyalty to his interests? In other words, do you understand that you are entitled to attorneys who have only your interests in mind, and not the interests of any other client?

20. Have you received any inducements, promises or threats with regard to your choice of counsel in this case?

21. Have you consulted with any attorneys other than Brickfield and/or Basil about the dangers to you of this potential conflict of interest?

22. Do you understand that you have a right to consult with an attorney free from any conflict of interest about this issue, and that the Court will give you an opportunity to do that if there is any aspect of the information that I have conveyed to you today that you wish to discuss with a conflict-free attorney?

23. Have you consulted with independent counsel about the conflict or potential conflict of interest that I have described to you today? Has counsel fully advised you about the situation? Do you wish to receive additional time to consult with independent counsel?

24. After considering all that I have said today about the ways in which your attorneys' current and prior representations of the Bank may adversely affect your defense, do you believe that it is in your best interest to continue with your attorneys representing you in this matter? Is that your wish?

25. Do you understand that by choosing to continue with your attorneys representing you, you are waiving your right to be represented solely by attorneys who have no potential conflict of interest?

26. Are you knowingly and voluntarily waiving your right to conflict-free representation?

27. Do you waive any post-conviction argument, on appeal or otherwise, that by virtue of Brickfield's prior representation of Noah Bank, you were denied effective assistance of counsel?

28. Do you waive any post-conviction argument, on appeal or otherwise, that by virtue of Basil's prior representation of Noah Bank, you were denied effective assistance of counsel?

29. Do you waive any post-conviction argument, on appeal or otherwise, that by virtue of Basil's current representation of Noah Bank, you were denied effective assistance of counsel?

E) **Conclusion**

30. Is there anything that I have said that you wish to have explained further?