# THE BASIL LAW GROUP

A PROFESSIONAL CORPORATION
COUNSELLORS AT LAW
125 WEST 31ST STREET #19-B
NEW YORK NY 10001
917-994-9973
FAX 831-536-1075
ROBERTJBASIL@RJBASIL.COM

September 19, 2022

VIA ECF
The Honorable John P. Cronan
United States District Judge
United States Courthouse
500 Pearl Street
New York, New York 10007

      Re: *United States v. Shin*, 19 Cr. 552 (JPC)

Dear Judge Cronan:

      Please accept this letter-brief on behalf of Edward Shin as his response to the "Forfeiture" section of the Government's Memorandum dated September 14, 2022. This is the first instance, other than the mention in the superseding indictment, in which the Government has raised the specifics of its forfeiture position, so the defense has not had a prior opportunity to present its counter-positions. The fact that this letter brief is limited in scope is not intended to waive oral argument on any sentencing issue, but is intended to give the Court Mr. Shin's position on forfeiture in writing and in advance of the sentencing date.

    The Government's claim of $5,521,550 in forfeiture obligations is flawed both concerning the loans and the kickbacks.

    In the first instance, the Government has not established the most crucial element of forfeiture, *i.e.*, Mr. Shin's "control" of the corporate recipients of the loans at issue.

> [I]n the context of a criminal forfeiture proceeding under section 982, an individual "obtains" proceeds "indirectly" through a corporation when the individual "so extensively control[s]," *First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 629, 103 S.Ct. 2591, 77 L.Ed.2d 46

(1983), or "dominate[s]," *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 17 (2d Cir. 1996), the corporation and its assets that money paid to the corporation was effectively under the control of the individual. **Factors that we think are likely to be relevant to this question include the individual's ownership interest; the level of control he exercised over the company; his authority to direct the disposition of corporate assets and the degree to which he exercised that authority; and the use of corporate assets for his personal expenses.**

*United States v Peters*, 732 F.3d 93, 103-04 (2d Cir 2013).

The proposed forfeiture at issue here is primarily based upon the amount of loan proceeds going to various corporate borrowers, not to Mr. Shin personally. Of course, the Government has the burden of proof to establish all elements of forfeiture by a preponderance of the evidence. The Government does not specifically refer to evidence in its memorandum, but merely recites case law related to the issue .

Mr. Shin does not concede by any means that James Kim, a convicted felon who testified under an agreement that encouraged him to assist the prosecution, was credible in his testimony. The Court will ultimately decide upon that credibility with regard to forfeiture matters, but Mr. Shin hopes that the Court will be able to discount James Kim's "recollections" of events occurring many years ago as being inaccurate, if not intentionally misstated. However, if this Court were to find James Kim's testimony 100% accurate, then the Government's proofs would still fail under the test set out in *United States v Peters*.

It is important for this Court to consider that the issue of control was never tried before the jury. The issues at bar were Mr. Shin's "hidden financial interest" in the corporation and his potential "conflicts of interest" with respect to loans in which he had such an interest. Thus, there are no jury findings upon which this Court can rely, other than the guilty verdicts.

The Basil Law Group, P.C.
September 19, 2022
Page **3** of **7**

In any event, the evidence adduced at trial does not support the Government's application.

<u>1797 Empire, Inc.</u> - With regard to Noah Bank's loan to 1797 Empire, Inc. James Kim testified that this was a partnership, and that he was the manager, not Mr. Shin. There was no evidence presented demonstrating that the Noah Bank loan proceeds, which were disbursed by Noah Bank for the purchase of the business, went to anyone but the seller. None went to Mr. Shin.

The relevant testimony by James Kim is as follows:

Q. Who was responsible for running the day-to-day operations of 1797 Empire?
A. So there was this manager whose name is Don Kim, and he was managing the store, and he did day-to-day operation of the store.
Q. And did you have any sort of role in running 1797 Empire?
A. I did overall management and supervising.

TR 874 – May 3, 2022. Thus, this Court should conclude that Don Kim and James Kim managed and supervised 1797 Empire, not Edward Shin.

James Kim further testified:

Q. To be clear, who were the individuals that had an interest in 1797 Empire?
A. So at that time there was myself and Mrs. Ryu, and there was a mention of Sophie Hahn, and at that time it was discussed that 40 percent for myself, percent for Mrs. Ryu, also 30 percent for Sophie Hahn. I think that is what was discussed.
Q. At some point you mentioned that 1797 Empire obtained a loan, correct?
A. Yes.
Q. And what was the purpose of that loan?
A. The purpose was to purchase the store.

TR 866 - May 3, 2022. Thus, this Court should conclude that the evidence does not establish that Mr. Shin had "control" of 1797 Empire or the Noah Bank loan proceeds. If James Kim is to be believed, Mr. Shin had no ownership interest and his wife, Sophie Han, was a minority owner

The Basil Law Group, P.C.
September 19, 2022
Page **4** of **7**

of only 30 percent. She had no ability to control this business, nor was there evidence that she did so.

<u>First Avenue Lee's Market Inc.</u> - While Mr. Shin undoubtedly exerted influence on this company, his influence did not rise to the level of "control." Decision-making authority was also held by David Lee. As Mr. Lee testified:

Q. What was your role at First Avenue Lee's Market?
A. I was the manager there.
      *    *    *
Q. Ultimately, how was the decision made to close the store?
A. I told him that we're struggling to pay the rent and he said the decision is up to me, but I knew there was no other options that I could think of and the store closed.
Q. What were some of the causes for why the business suffered?
A. Couple factors that I could think of, at the time when I got there, they were still doing construction on the Second Avenue train line, we had a lot of big orders from the construction workers, but they eventually finished and moved on and we lost a lot of business that way. We had issues with tobacco sales and taking food stamps because the employees sold tobacco to underage kids and the nighttime employee did a food stamps trafficking and we got those licenses taken away and we lost business that way, too.

TR 1371; 1420 – May 9, 2022. Thus, Mr. Lee was the day-to-day manager of First Avenue Lee's Market, and a shared decision-maker with Mr. Shin. When it came to the ultimate decision of closing the company or keeping it open, Mr. Shin had no role and exercised no influence, let alone "control" as required by *United States v Peters.*

<u>Armonk Farm/Café 45</u> - With regard to Noah Bank's loan to Armonk Farm, this company was controlled by James Kim, not Mr. Shin. As James Kim testified:

Q. Armonk Farm, Inc., is that a business you're familiar with?
A. Yes. I operated this company.
Q. Was there anyone else beside yourself that had an interest in Armonk Farm?
A. To my recollection, at first there were three of us, and it was initially introduced by Mr. Charlie Oh. So we went to the store and looked at the store. My opinion at the time was that, because there are other too many stores around, I wasn't really pleased with the location. But then Edward Shin said, "But anyway let's try and do this." So three of us started this business.

The Basil Law Group, P.C.
September 19, 2022
Page **5** of **7**

TR 883 May 3, 2022.  Thus, Mr. Shin did not "operate" this company, and was no more than a minority owner if Mr. Kim is to be believed.  Further, the loan was for construction, not distribution to any of the owners:

Q. Now, Mr. Kim, I want to ask you about Armonk Farms a little bit.
A. Yes.
Q. Now, that's a deli that got an SBA loan for construction; correct?
A. Yes.
Q. Just like 32 Madison, correct, that was a construction loan?

TR 1168-69  May 5, 2022.  Accordingly, Mr. Shin could not be found to have "controlled" Armonk Farms as that term is defined under *United States v Peters.*

32 Madison Farm, Inc. – With regard to Noah Bank's loan to 32 Madison Farm, Inc., this company was not controlled by Mr. Shin.  As James Kim testified:

Q. Besides yourself and Shin, was there anyone else that had an interest in 32 Madison?
A. Yes, there's another partner named James Lee, and his Korean name is Jin Myung Lee (ph.).

TR 927 May 4, 2022.  Thus, Mr. Shin was one of three "partners" in this company.

Q. And briefly, what, if anything, happened to Lee after the loan closed?
A. Well, in the process of making a loan, we had a conversation over the phone, but after the closing, suddenly this person, Mr. Lee, just disappeared for two weeks. So myself and Edward Shin was worried, maybe he had some type of accident or something.
Q. Did Lee end up returning?
A. Well, he appeared after two weeks and it's my assumption that after we received the loan, I think he thought that he could use the money for himself, but later he found out that we could only use the money for the construction, and the name is AI Form. Just by that, we could use the money and I think he realized that and reappeared.

TR 930 May 4, 2022

Q. And in this case, the money that was being loaned by Noah Bank to 32 Madison Farm, it was for the purpose of construction of the interior of the leasehold; is that correct?
A. Yes.

Marie Lee TR:480 April 29, 2022.  Accordingly, Mr. Shin could not be found to have "controlled" 32 Madison Farm, Inc as that term is defined under *United States v Peters.*  Mr.

The Basil Law Group, P.C.
September 19, 2022
Page **6** of **7**

Shin was, accordingly to James Kim, only one of three owners. In addition, no funds went to Mr. Shin from the Noah Bank loan, as the entire loan "was for the purpose of construction of the interior of the leasehold." Indeed, it is striking how little evidence there was of personal use or gain to Mr. Shin on any of these loans. *Cf. Peters*, 732 F.3d at 104 (factor to be considered is "the use of corporate assets for his personal expenses."

At a minimum, we ask the Court to apportion these loans to reflect Mr. Shin's personal gains on these loans, and not be burdened by the gains of James Kim and other owners of the borrowers selected by the Government. The purpose of forfeiture is punitive in nature and the extent of Mr. Shin's punishment should be limited to what he personally obtained. Given Mr. Shin's health issues, his age, poor finances and very limited prospects for future earnings, we ask the Court to impose a realistic figure on forfeiture, if inclined to impose any at all.

<u>Commissions paid to James Kim</u> -  Commissions paid to James Kim were paid by Noah Bank to Mr. Kim and not to Mr. Shin. In addition, the number of kickbacks and the specific amounts paid to Mr. Shin were never established at trial. As James Kim testified:

Q. And you would then typically kick back half of that to Mr. Shin; is that right?
A. Yes, I think so.
Q. And you would then typically kick back half of that to Mr. Shin; is that right?
A. Yes, I think so.
Q. And yesterday you told us that this happened, I believe, roughly between 2009 and 2013; is that right?
A.      Yes.
Q. Sitting here now, do you recall each and every time you kicked back money or checks to Shin?
A. I can't say each and every time.

TR 742-722 – May 3, 2022. Accordingly, this vague evidence does not meet the preponderance standard necessary to establish a forfeiture amount relating to the kickbacks.

The Basil Law Group, P.C.
September 19, 2022
Page **7** of **7**

      On these bases, in addition to the fundamental unfairness of saddling Mr. Shin with $5,521,550 in unpayable personal debt, in addition to his many other punishments, we object to the forfeiture application made by the Government.

                                    Respectfully,

                                    /s Robert J. Basil
                                    ROBERT J. BASIL, ESQ.
                                    robertjbasil@rjbasil.com
                                    Attorney for Defendant Edward Shin

Cc: Assistant U.S. Attorney Tara LaMorte
     Assistant U.S. Attorney Anden Chow
     Assistant U.S. Attorney Jessica Greenwood
     Paul Brickfield, Esq.