# THE BASIL LAW GROUP

A PROFESSIONAL CORPORATION
COUNSELLORS AT LAW

125 WEST 31ST STREET #19-B
NEW YORK NY 10001
917-994-9973
FAX 831-536-1075
ROBERTJBASIL@RJBASIL.COM

October 4, 2022

<u>**Via eMail and ECF**</u>
Honorable John P. Cronan, U.S.D.J.
United States District Court
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

    Re:    **United States v. Edward Shin**
              **Case No.: 1:19-cr-00552-JPC**

Dear Judge Cronan:

The Basil Law Group, P.C., Robert J. Basil appearing, along with Paul Brickfield, represents Edward Shin in the above-referenced matter. Please accept this letter-brief as counsel for the defendant's effort to respond to the September 30, 2022 letter-brief submitted by counsel for the Government.

**I**

**RECENT PROCEDURAL HISTORY OF THE PARTIES' RELEVANT POST-TRIAL SUBMISSIONS**

On September 7, 2022, Mr. Shin filed a Sentencing Memorandum that sought a downward departure and variance from the Sentencing Guidelines. By agreement of the parties, the Government filed its response on September 14, 2022. Thus, the Government had the opportunity to respond to all facts and arguments raised by Mr. Shin.

1

By way of this Court's Order dated September 19, 2022, Your Honor requested that the parties address two issues regarding Noah Bank's loan to Garden of Eden Enterprises, Inc. ("GOE"). First, whether the loan issued to GOE should be included in the total loss amount and, if so, whether the entirety of the loan should be considered as a temporary loss. Second, whether any amounts of the loan paid following default should be considered as loss credits, pursuant to U.S.S.G. Section 2B.1, note 3(E)(ii) or any other provision. The parties were to make simultaneous, responsive submissions on September 29, 2022, and such submissions were timely made. No reply briefs were authorized, and no party sought leave to file a reply brief.

Although the parties had been specifically instructed to address the GOE Loan and did so, the Government waited until after the submissions to interview John Kim, a bank officer with Noah Bank. The Government then submitted an unauthorized reply letter-brief (the "Reply") not merely based upon that interview, but also based upon arguments it could have raised in its submission filed the day before.

The motivation for this submission activity appears to The Basil Law Group to be a concern that the Government's efforts to incarcerate Mr. Shin for seven years are in jeopardy, based upon the law, facts and arguments submitted by Mr. Shin's counsel. Indeed, to bolster its incarceration efforts the Government has chosen to "attack the messenger" who submitted those items to this Court.[1]

---

[1] The Government went so far as to accuse the undersigned counsel of perjury in my declaration submitted in support of Mr. Shin's motion to reduce sentence. *Compare* September 7, 2022 Declaration of Robert J. Basil, *Document 231-1*, ¶ 19, with Government's September 14, 2022 memo, *Document 233* (falsely accusing this counsel of attempting to extort legal fees from Noah Bank to pay for Mr. Shin's defense).

In any event, counsel for Mr. Shin does not believe that a full response to the Government's September 29, 2022 memorandum was contemplated by the Court before the October 6, 2022 hearing. Accordingly, Mr. Shin will address here only the GOE matters raised in the Government's Reply.

## II

### ERRORS AND OMISSIONS IN THE GOVERNMENT'S UNAUTHORIZED REPLY LETTER-BRIEF

**A.** The Government Failed to Submit a Statement from the "Representative" of Noah Bank Upon Which It Relied in its Reply.

The purported impetus for filing the Reply was not any concern over the content of Mr. Shin's September 29, 2022 submission, but a telephone conversation with a Noah Bank employee initiated by the Government on September 30, 2022. That employee was revealed to counsel as John Kim, who testified on behalf of the Government at trial. Surely Mr. Kim was available to the Government before September 30, 2022, and the Government offers no explanation, let alone valid excuse, for not conducting this interview earlier, in time for its September 29, 2022 submission.

Whether a sworn statement from John Kim is necessary or not to constitute "evidence" reviewable for sentencing purposes, at least something in writing from John Kim should have been submitted. Mr. Shin and this Court need something concrete so they can evaluate the information that John Kim provided for accuracy and also to determine if that information was complete. We have none of that, except that we did receive some heavily redacted notes from the Government's counsel from the interview. We do not know how careful John Kim was in this hastily arranged call, nor are we able to determine if John Kim was under any pressure to give only favorable information to

3

the Government on a rushed basis. Thus, this interview information, and arguments based upon it, should be ignored by the Court when determining whether the Government has prevailed on any issue related to the GOE Loan by a preponderance of the evidence. Such unreliable information should certainly be ignored as a basis for determining a proper sentence for Mr. Shin.

> **B.** Noah Bank Did Not Lose the SBA Guarantee for The GOE Loan Because of any Criminal Activity Undertaken by Mr. Shin.

The most important goal of the Reply is patently to convince the Court that Noah Bank lost the valuable advantage of the SBA guarantee for the GOE Loan because of Mr. Shin's criminal conduct. The Court need not engage in the fact finding necessary to determine if Mr. Shin committed crimes related to the GOE Loan for this purpose. Even if Mr. Shin had committed the crimes charged by the Government, *i.e.,* compelled payment of unearned commissions to James Kim and accepting a portion of those commissions as a kickback, those events could not have been the cause of the loss of the SBA guarantee.

The SBA guarantee was revoked on June 29, 2021, by way of "Demand for Reimbursement of Improper Payment" sent from the SBA to Julie Ko, Senior Vice President of Noah Bank (the "SBA Demand"). A copy of that letter is attached to the 10/4/2022 Supplement Declaration of Robert J. Basil ("Basil Supp Decl") at ¶ 23 as Exhibit C.

The SBA Demand was issued a year before Mr. Shin was convicted of any crime. Thus, the SBA would have had no basis to issue the SBA Demand based upon a finding of Mr. Shin's guilt. Indeed, the SBA made no such finding, or even an accusation.

The only bases for revoking the SBA Guarantee were the failure of Noah Bank to confirm that GOE had made the required capital injection in the form of an inventory

purchase, and Noah Bank's failures to document the required disbursement activity. *See* Basil Suppl Decl at Exhibit C (SBA Demand, p. 7). Not only was Mr. Shin not charged with criminal activity in these regards, but there is nothing in the record, including any report from John Kim, that Mr. Shin had any role at all in these basic loan procedures. Yet it was only these failed procedures that caused the loss of the GOE Loan guarantee.

The Government contends that, "If the defendant had not engaged in this criminal scheme, Noah Bank would not be carrying this risk right now because the SBA guarantee would have offset its losses." Reply at p. 2. The Government further contends that, "the Government maintains that the amount of the SBA guarantee that Noah Bank lost as a result of the defendant's conduct ($1,584,000.54) is the appropriate number for calculating the harm caused by the defendant's conduct. If the defendant had not engaged in his criminal scheme, Noah Bank would not be carrying this risk right now because the SBA guarantee would have offset its losses." Reply at p.2.

Both of these statements are demonstrably wrong. The loss of the SBA guarantee had nothing to do with Mr. Shin's charged crimes, even if this Court were to find that he had committed all of them exactly as charged by the Government. In short, Mr. Shin's sentence should not be affected by consideration these arguments.

C. The Government Misrepresents the Risk of the GOE Loan to Noah Bank, Which at This Point in Time Is Approximately Zero.

The Government resorted to inaccuracies in the Reply to present to this Court a false picture of the risk involved in this GOE Loan, and the relationship of any such risk to Mr. Shin's conduct. For example, the Government represented:

- In or about December 2015, Garden of Eden defaulted on its loan from Noah Bank. At the time, the outstanding principal on its loan was approximately $3,022,132.73. Because **the Garden of Eden Loan was**

5

> **not backed by any physical collateral**, the amount of default was not offset by any other physical assets. Accordingly, the full default amount had to be taken as loss. (emphasis added).

Reply at p. 1.  This is not correct.  The GOE Loan was backed by physical collateral valued at $916,542.  *See,* Basil Supp Decl at ¶¶ 9, 12 & Exhibit A (GX-321-07) at p. 2 of credit memo.  When the default occurred, an offer was made to purchase that collateral for $750,000 from Noah Bank, an offer Noah Bank rejected as far too low.  Basil Supp Decl at ¶¶ 12-17.

In addition to the physical collateral Noah Bank possessed at the time the GOE Loan issued, there were several corporate and personal guarantees.  Indeed, the personal guarantees were from the owners of the various business guarantors whose net worth was confirmed by Noah Bank to be in excess of $30 million.  Basil Supp Decl at ¶¶ 9, 14 & Exhibit A (GX-321-07) at pp. 4-5 of credit memo.

As of May 23, 2016, those guarantors are not mere guarantors.  There is an entered judgment by the Superior Court of New Jersey in an amount in excess of $3.1 million jointly and severally against those guarantors, and that judgment is entered as a lien on any real property any of the guarantors may have, or may later acquire, in New Jersey.  Basil Supp Decl at ¶ 18 & Exhibit B.  Such a lien could be easily domesticated to a state where such real estate exists by competent counsel.  In other words, Noah Bank could have collected the full amount owed to it *immediately* by executing on this judgment.  That right still exists unless Noah Bank has chosen to compromise its judgment rights after Mr. Shin no longer was with Noah Bank and The Basil Law Group was no longer representing Noah Bank.[2]

---

[2] Noah Bank fired The Basil Law Group in May 2019 as its counsel in response to the decision of The Basil Law Group to represent Mr. Shin in this criminal matter.

6

Further, each of the GOE Loan guarantees were standard SBA guarantees that included the provision that the guarantors waived any defense that: Borrower has avoided liability on the Note or Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents. Basil Supp Decl at ¶ 19. Thus, even if Noah Bank has decided to waive all sums due and owing other than the principal from GOE and allowed GOE to avoid any liability under the SBA note, Noah Bank could collect from the Guarantors all amounts it could have collected but for that waiver and any other wavier that Noah Bank determined was in its best interest during the GOE bankruptcy.[3]

In addition, the Superior Court's order provided that:

> ORDERED, that pursuant to N.J.S.A. § 12A:9-609 and the various submitted contracts entered into between plaintiff and each of the non-individual defendants, directing each of the non-individual defendants, i.e., GARDEN OF EDEN ENTERPRISES, INC., COSKUN BROTHERS SPECIALTY FOOD, INC., GARDEN OF EDEN GOURMET, INC. and BROADWAY SPECIALTY FOOD, INC. upon 10-days' written notice delivered via certified mail, return receipt requested, or by overnight courier service, or by personal service, to assemble such collateral described in the aforementioned contracts and notice and to make it available for immediate possession by plaintiff.

Basil Supp Decl at ¶ 18 & Exhibit B. Thus, the judgment permitted Noah Bank to liquidate all collateral owned by the corporate guarantors if it had chosen to do so.

There was never a need for Noah Bank to suffer any loss on the GOE Loan because it was over-secured. This Superior Court judgment alone protected Noah Bank from any conceivable loss.

These facts demonstrate that the Government's claim that Noah Bank will lose somehow lose $857,063.72 on the GOE Loan as a result of Mr. Shin's conduct is wrong.

---

[3] We understand that certain rights may have been voluntarily relinquished by Noah Bank in July 2020 in the context of the GOE bankruptcy, including the rights to collect against some but not all guarantors, and expressly excluding the right to collect against Mustafa Coskun in the event of default.

7

If Noah Bank chooses to waive collection of interest and penalties, not to take advantage of the Superior Court judgment that The Basil Law Group obtained for it, and to ignore the waivers of defenses that the SBA guarantees provide, then that "loss" is not something for which Mr. Shin should suffer additional sentencing. Those actions would be simple banking malpractice.

The Government's presentation regarding the supposed risk faced by Noah Bank of non-payment of the GOE Loan paints a false picture of the situation. The actual scenario shows why it is not surprising that Noah Bank did not claim a loss for the GOE Loan in its request for restitution on August 1, 2022. There will be no loss unless such loss is caused by Noah Bank's own decisions to waive its legal rights.

### III

### CONCLUSION

The Reply makes meritless arguments based upon inaccurate information. As such, it should be ignored.

Respectfully submitted,

Robert J. Basil
The Basil Law Group, P.C.

AND

/s/ Paul B. Brickfield

Paul B. Brickfield

cc: Assistant U.S. Attorney Tara LaMorte (via ECF only)
Assistant U.S. Attorney Anden Chow (via ECF only)
U.S. Probation Officer Stephanie McMahon (via electronic mail only)