## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-v-<br><br>EDWARD SHIN,<br>              Defendant. | Criminal Action<br><br>Case No.: 1:19-cr-00552-JPC<br><br>**SUPPLEMENTAL DECLARATION OF ROBERT J. BASIL** |

I, **ROBERT J. BASIL**, the undersigned counsel, of full age, hereby declare pursuant to 28 U.S.C. § 1746 under penalty of perjury as follows:

1. I am an attorney in good standing of the State of New York, admitted to practice in this Court continuously since 2003, and the State of New Jersey, admitted and practicing continually in that State since 1988.

2. I am the managing shareholder of the law firm of The Basil Law Group, P.C., co-counsel for criminal defendant Edward Shin in this matter.

3. I am fully familiar with the facts certified herein from my personal knowledge and involvement in the matters reported.  I make this Declaration in response to Tara LaMorte's September 30, 2022 letter ("LaMorte Letter") regarding the Garden of Eden ("GOE") loan.

4.      On December 28, 2015, The Basil Law Group, P.C. ("TBLG") was retained by Noah Bank to collect funds in response to several missed monthly payments by GOE on its SPA guaranteed loan in the initial amount of $5,000,000.

5.      During TBLG's representation, I was the primary person working on this matter.

6.      During TBLG's representation, my primary contacts at Noah Bank were Edward Shin and John Kim.

7.      Edward Shin and John Kim instructed me to be extremely aggressive with respect to collection of the GOE loan.

8.      In the course of my representation, I reviewed the GOE loan file to determine the best course of action and to identify the sources of recovery.

9.      Among the most important pieces of documentation was the GOE credit memo.  A true copy of the GX-321-07 credit memo is annexed hereto as **Exhibit A.**

10.     The credit memo revealed that the GOE loan was more than adequately collateralized and would easily be brought current from either the collateral, the corporate guarantees, the personal guarantees, or some combination.

11.     There were four corporate guarantors and Noah Bank held a first lien position on all assets of those four corporate guarantors, along with its lien on GOE's assets.  *See,* **Exhibit A** at pp. 1-4.

12.     The value of the corporate collateral at the inception of the GOE loan was $916,542.  *See,* **Exhibit A** at p. 2.

13.     The LaMorte Letter's statement that "the Garden of Eden Loan was not backed by any physical collateral" is not accurate.

- 1 -

14.     There were two personal guarantors of the GOE loan in addition to the corporate guarantors: Mustafa Coskun and Celal Coskun.   Their net worth at the time of the GOE loan was $16,909,152  and $12,973,548 respectively.  *See,* **Exhibit A** at pp. 4-5.

15.     Given the payment history before the missed payments and the over-collateralization of the GOE Loan, I viewed this as a nearly risk-free collection.  Thus, this collection was on an hourly basis, as a contingency would have been unfair to Noah Bank,

16. On December 29, 2015, I sent demand letters to GOE and all guarantors stating:

As of the close of business, January 1, 2016, GOEEI will owe Noah Bank $28,565.34 in interest and $2,325.79 in late fees.  Per Diem interest after January 1, 2016 accrues at $476.09. GOEEI will also owe $64,466.26 in principal payments; the total amount due will be $95,357.39 on that date.  These amounts must be delivered to Noah on or before January 7, 2016.  If all amounts due are not received by January 7, 2016, GOEEI's loan will be accelerated and the entire loan balance, including $3,022,132.73 in principal, plus all attendant costs, penalties, ongoing default interest, and ongoing incurred costs of collection and attorney's fees, will become immediately due from GOEEI        and      each      of      the      guarantors.

17.     In response, I was contacted by a representative of GOE attempting to convince Noah Bank to accept $750,000 in exchange for releasing the physical collateral, an offer that Noah Bank declined as laughably inadequate.

18.     I then filed suit in New Jersey Superior Court on the accelerated GOE loan and obtained a $3.1 million judgment against GOE and all guarantors with an order permitting easy turnover to Noah Bank of the collateral owned by the guarantors' businesses.  A true copy of the Judgment and Opinion is annexed hereto as **Exhibit B.**

19.     Each of the guarantees were standard SBA guarantees that included the provision that the guarantors waived any defense that: Borrower has avoided liability on

the Note or Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

20.     As a result of this judgment, which in my opinion could have been easily collected from the wealthy guarantors without resort to the physical collateral, GOE filed for protection under Chapter 11 of the United States Bankruptcy Code.

21.     During the course of the bankruptcy, there was never a doubt that the debts of GOE could be restructured without resort to the guarantors or liquidation of any physical collateral.

22.     Among the dozens of delinquent loans I have collected for Noah Bank and other banks in the course of my career, the GOE Loan was the most secure of all of them.

23.     On June 29, 2021, the SBA issued its "Demand for Reimbursement of Improper Payment" regarding *inter alia* the GOE Loan.  A true copy of the June 29, 2021 SBA Demand for Reimbursement is annexed hereto as **Exhibit C.**  *See*, Pages 6-8.

By:     _____
        Robert J. Basil, Esq.
        The Basil Law Group, P.C.
        125 West 31st Street #19-B
        New York NY 10001
        (917) 994-9973

        *Counsel for Defendant Edward Shin*

Dated:          October 4, 2022