UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
UNITED STATES OF AMERICA
                                                    :
              - v. -                        S3 19 Cr. 552 (JPC)
                                                    :
EDWARD SHIN,
       a/k/a "Eungsoo Shin,"             :

              Defendant.                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**GOVERNMENT'S REPLY IN SUPPORT OF ITS MOTION FOR A
PRELIMINARY ORDER OF FORFEITURE FOR SUBSTITUTE ASSETS AND IN
<u>OPPOSITION TO DEFENDANT'S CROSS MOTION FOR THE EXONERATION OF
BAIL</u>**


                                   DAMIAN WILLIAMS
                                   United States Attorney for the
                                   Southern District of New York


Tara M. La Morte
Anden Chow
Jessica Greenwood
Assistant United States Attorneys
       - Of Counsel -

The Government respectfully submits this reply memorandum in further support of its motion pursuant for a Preliminary Order of Forfeiture as to Substitute Assets (the "Substitute Asset Motion") (Dkt. 259) and in opposition to the defendant's motion for the exoneration of bail (the "Exoneration Motion") (Dkt. 256). For the reasons set forth below, the Court grant the Substitute Asset Motion, deny the Exoneration Motion, and forfeit the defendant's interest in the $25,000 cash bail personally posted on or about by the Defendant in this criminal matter on or about May 30, 2019, and currently on deposit with the Clerk of Court (the "Substitute Asset").

A.  <u>The Government is Authorized to Seek the Forfeiture of the Substitute Asset</u>

The defendant argues that the Government has not satisfied the statutory requirements set forth in 21 U.S.C. § 853(p) and therefore cannot seek the forfeiture of the "Substitute Asset." (Def. Opp. at 8 (Dkt. 261-1)). He is wrong.

Following the defendant's conviction after a jury trial, the Court entered an Order of Forfeiture/Money Judgment (the "Order of Forfeiture") imposing a forfeiture money judgment in the amount of $5,506,550 against the defendant (the "Money Judgment"), representing the amount of proceeds traceable to the offenses of conviction that the defendant personally obtained. As an initial matter, it is clear that pursuant to 21 U.S.C. § 853(a), the Court is authorized to enter a forfeiture money judgment in the amount of proceeds of the defendant's offenses. *U.S.* v. *Awad,* No. 06-600 (DLC), 2007 WL 3120907, at *2 (S.D.N.Y. Oct. 24, 2007) ("Where a defendant lacks the assets to satisfy the forfeiture order at the time of sentencing, the money judgment against the defendant is effectively an *in personam* judgment in the amount of the forfeiture order."); *see also United States v. Stathakis,* No. 04-790, 2008 WL 413782 at *10 (E.D.N.Y. Feb. 13, 2008) ("In addition to entering judgment of forfeiture against specific properties, the Court may enter a money judgment against a defendant" under Section 853(a)); *United States v. Kalish,* No. 06-656 (RPP),

2009 WL 130215, at *9 (S.D.N.Y. Jan. 13, 2009) (finding the government is entitled to an *in personam* judgment when a defendant lacks the assets to satisfy the forfeiture order).  Following the entry of a forfeiture money judgment, the Government can seek the forfeiture of any asset of the Defendant up to the amount of the Money Judgment provided the requirements of 21 U.S.C. § 853(p) are met.[1]

As set forth in the Government's Substitute Asset Motion, 21 U.S.C. § 853(p), which applies to all criminal forfeitures, requires the Court to enter the forfeiture of substitute assets where the assets originally subject to forfeiture, (*i.e.*, the property constituting proceeds) "as a result of any act or omission of the defendant," cannot be located upon the exercise of due diligence.  21 U.S.C § 853(p)(1); *see also United States* v. *Alamoudi,* 452 F.3d 310, 314 (4th Cir. 2006) ("Section 853(p) is not discretionary.... [w]hen the Government cannot reach the property initially subject to forfeiture, federal law requires a court to substitute assets for the unavailable tainted property").  Contrary to the defendant's argument. this obligation has already been satisfied.  First, consistent with the caselaw cited above, this Court already determined that the proceeds at issue in this case—comprised of loans largely repaid to Noah Bank, and cash in the form of kickback payments paid years ago—have been dissipated and cannot be located with the exercise of due diligence.  This is reflected in the he Preliminary Order of Forfeiture/Money Judgment entered by the Court at the time of sentencing, in which the Court expressly found as

---

[1] To the extent that the Defendant attempts to re-litigate that he did not personally obtained the proceeds in the amount set forth in the Money Judgment, as required by 18 U.S.C. § 982, such an argument is foreclosed.  *See United States v. Noyes*, 557 F. App'x 125, 127 (3d Cir. 2014) (A "criminal forfeiture is part of the defendant's sentence and must be challenged on direct appeal or not at all."); *United States v. White*, No. 17-431 (RMB), 2021 WL 3038670, at *1 (S.D.N.Y. July 19, 2021) (Defendant's motion to vacate forfeiture order denied as he could not contest the forfeiture order following sentencing); *see generally*, Fed. R. Crim. P. 32.2(b)(4)(C); Fed. R. App. P. 4(b).

follows: "the Court finds that as a result of acts and/or omissions of the Defendant, the proceeds traceable to the offenses charged in Counts One through Six of the Indictment that the defendant personally obtained cannot be located upon the exercise of due diligence." This finding alone is sufficient to defeat the defendant's objection to the entry of the proposed Preliminary Order of Forfeiture as to Substitute Assets.

Even if this Court had not already made the requisite finding, the Declaration of Deputy United States Marshal John Calabria, submitting in support of the Government's Substitute Asset Motion, supplies a sufficient basis for this Court to conclude that the standard set forth in 21 U.S.C. § 853(p) has been met. In his declaration, Deputy Marshal Calabria avers that he "conducted an investigation into any assets of the defendant's that constitute proceeds of the offense…by conducting asset searches utilizing the CLEAR law enforcement database." (Calabria Decl. ¶ 18). However, these searches "yielded negative results". (*Id*. ¶ 19). The defendant does not challenge Deputy Marshal Calabria's assertion, yet suggests that the Government must do more. Not so. Courts have routinely rejected similar challenges to substitute asset motions that contain analogous assertions of diligence, made under penalty of perjury, by those tasked with finding assets. As the Tenth Circuit and courts in other circuits, including the Second Circuit, have observed, "[t]he Government generally has little difficulty in making the necessary [due diligence] showing. . . " *United States* v. *Gordon*, 710 F.3d 1124, 1166–67 (10th Cir. 2013) (quoting Stefan D. Cassella, *Asset Forfeiture Law in the United States* § 22–3, at 643 (2007) (collecting cases)); *see also United States* v. *Christie*, 249 F. Supp. 3d 739, 745 (S.D.N.Y. 2017) (citing *Gordon* in finding the Government met its burden under 853(p))*; United States* v. *Alamoudi,* 452 F.3d 310, 316 (4th Cir. 2006) (concluding that the affidavit was sufficient to support forfeiture under § 853(p) where it contained information that, based on the investigator's experience, the "acts" or "omissions" of the

defendant made the proceeds unavailable); *United States* v. *Chittenden*, No. 12-394, 2015 WL 3444826, at *4 (E.D. Va. May 27, 2015) (stating that the Government's burden to establish the exercise of due diligence, as with the other prerequisites of § 853(p) is "not high").

In particular, in *Gordon*, the Tenth Circuit upheld a substitute assets order that stated simply, "[d]ue to acts or omissions of [the defendant], additional property directly traceable to the conspiracy . . . is unavailable for forfeiture," and that law enforcement personnel "have been unable to locate, through the exercise of due diligence, any other assets . . . that are traceable to the offenses." *Gordon*, 710 F.3d at 1166.  In upholding the order, the Tenth Circuit observed that the defendant provided "no reasonable basis to dispute or otherwise contradict the averments in [the agent's] affidavit that the government exercised due diligence in seeking to locate the directly forfeitable funds at issue and that they were missing due to an act or omission of [the defendant]." *Id.*  And in *Christie*, the district court held that the Government had substantiated the due diligence requirement by providing an agent's affidavit which explained the investigation and the efforts made to locate the directly forfeitable property. *Christie*, 249 F. Supp. 3d 739 at 745. The court in *Christie* further found that "an agent's affidavit that sets forth that he searched databases commonly utilized by law enforcement in an effort to locate assets of the Defendant and that these searches yielded negative results…satisfy the modest showing required by the substitute asset statutes." *Id*. And most recently, in *United States v. Malley*, No. 21-215 (ER), 2022 WL 2764018, at *2 (S.D.N.Y. July 15, 2022), the court agreed with the analysis in *Christie*, and similarly found that an agent declaration averring that the agent was unable to locate proceeds of the defendant through law enforcement databases was sufficient to meet 853(p) requirements. *Id*.

So it is here.  As noted above Deputy Marshal Calabria avers that he "conducted an investigation into any assets of the defendant's that constitute proceeds of the offense…by

conducting asset searches utilizing the CLEAR law enforcement database." (Calabria Decl. ¶ 18). However, these searches "yielded negative results." (*Id*. at 19). The above-discussed precedent establishes that this sufficient to satisfy 21 U.S.C. § 853(p). Moreover, as mentioned above, the defendant has not set forth any argument that contests these assertions—in fact, consistent with Deputy Marshal Calabria's declaration, he claims that he has no assets, let alone crime proceeds generated many years ago. Accordingly, the requirements under 21 U.S.C. § 853(p) to forfeit the Substitute Asset has been met. No further showing is required.[2]

B. Third-party Interests in the Substitute Asset Must Be Resolved in the Ancillary Proceeding

The defendant also argues that the proposed Preliminary Order of Forfeiture as to Substitute Assets cannot be entered because the defendant's wife, Sophie Hahn, has a marital interest in the Substitute Asset. (*See* Def. Opp. at 10-11 (Dkt. 261-3)). This argument also fails.[3] In the event that the Substitute Asset Motion is granted and the proposed Preliminary Order of Forfeiture as to Substitute Assets is entered, the Order operates to forfeit *only* the defendant's interest in the Substitute Asset. *See United States v. Bennett*, No. 97-639 (SAS), 2004 WL 829015, *3 n.5 (S.D.N.Y. Apr. 15, 2004) (order of forfeiture is final as to defendant even though it remains preliminary as to third parties; that court may need to make findings under Rule 32.2(c)(2) if no third party files a claim does not mean that the order was not final as to defendant at sentencing).

---

[2] Alternatively, even were a further showing of due diligence is required, the Government should be afforded an opportunity to provide it.

[3] Despite the fact that the defendant is legally barred from asserting an interest on behalf of a third party, including his wife, the Government will address the argument asserted on behalf of his wife, Sophie Hahn. 18 U.S.C. § 853(n)(2); *see also United States v. Christunas*, 126 F.3d 765, 769 (6th Cir. 1997) (defendant lacks standing to assert wife's third-party claim); *United States v. Collado*, 14 Cr. 731 (LTS), 2020 WL 248685 (S.D.N.Y. Jan. 16, 2020) (convicted defendant lacked standing to assert alleged third-party interest in seeking return of currency).

Accordingly, as set forth in the Substitute Asset Motion, if the Court enters the proposed Preliminary Order of Forfeiture as to Substitute Assets, the Government then becomes obligated to provide notice to all third parties known to the Government to have a potential interest in the Substitute Asset—which would include the defendant's wife and counsel.[4]  (Gov. Mot. ¶ 17 (citing 21 U.S.C. § 853(n); Fed. R. Crim. P. 32.2(c) & (e)).  Assuming *arguendo* that either Sophie Hahn or the defendant's attorney has an interest in the Substitute Asset, the appropriate forum to adjudicate such interest is in an ancillary proceeding that follows the entry of the proposed Preliminary Order of Forfeiture as to Substitute Assets.  *See*, *e.g.*, ets. *DSI Assocs. LLC v. United States*, 496 F.3d 175, 183 n.12 (2d Cir. 2007); *Kolfage,* 2020 WL 7342796, at *6; *United States v. Faulk*, 340 F. Supp. 2d 1312, 1315 (M.D. Ala. 2004) (18 U.S.C. § 853(k) bars third parties from opposing a motion to forfeit substitute assets other than by filing claims in ancillary proceeding); *United States* v. *Kitchen*, No. 07-895, 2009 WL 728498, *2 (D. Utah Mar. 19, 2009) (court denied wife's motion to intervene to oppose forfeiture of defendant's substitute assets; wife must file claim in ancillary proceeding).

Nonetheless, even if the Court were to consider Ms. Hahn's marital interest claim at this point (and it should not), it is clear that courts have "declined to read the marital property provision as conferring an ownership interest outside the context of equitable distribution of property.[5]  In *United States* v. *Premises Known as 717 So. Woodward Street,* 2 F.3d 529 (3d Cir.1993), the Third

---

[4] In the event the proposed Preliminary Order of Forfeiture as to Substitute Assets is entered, the Government would provide direct notice both to Sophie Hahn and the defendant's counsel (who has made a claim, without providing documentation, that a UCC-1 was filed against the defendant's personal property).  In the event either of those third parties chooses to file a petition in the ancillary proceeding properly setting forth their claim of interest, the Government would then be in a position to evaluate, and litigate, those third-party claims in the Substitute Asset.

[5] For the purpose of this Motion, the Government assumes *arguendo* that Pennsylvania law applies as the defendant has asserted Pennsylvania law governs this issue.

Circuit held that while the Pennsylvania Supreme Court had not considered this issue, the Pennsylvania Superior Court has declined to acknowledge a spouse's marital interest outside the equitable distribution of property and noted that "[i]n forfeiture actions, federal courts applying the laws of other states have refused to find that a right to equitable distribution of marital property confers ownership independent of a divorce proceeding." *Id.* at 536 (citing *United States v. 116 Emerson St.,* 942 F.2d 74, 79 n. 3 (1st Cir.1991); *United States* v. *Strube*, 58 F. Supp. 2d 576, 584 (M.D. Pa. 1999); *United States v. Schifferli,* 895 F.2d 987, 989 n.* (4th Cir.1990)).

This conclusion is consistent with that reached by numerous other federal courts, applying similar state statutes in forfeiture cases, which have refused to find that a right to equitable distribution of marital property confers ownership independent of an equitable distribution proceeding. *See, e.g., United States* v. *Browne*, 552 F. Supp. 2d 1342, 1346–47 (S.D. Fla. 2008) (because New York does not recognize a marital interest in property until the marriage is dissolved, defendant's spouse could not establish that she had a legal interest in defendant's forfeited property merely by relying on the fact that she and defendant were married); *United States v. Premises Known as 717 S. Woodward St., Allentown, Pa.*, 2 F.3d 529, 535-36 (3d Cir. 1993) (concluding Pennsylvania marital property division law did not confer a present ownership interest solely by virtue of marriage to title owner); *United States v. 116 Emerson St.,* 942 F.2d 74, 79 & n. 3 (1st Cir. 1991) (Rhode Island's equitable distribution statute applies only to assignment of property interests during divorce proceedings); *see also United States v. Cochenour,* 441 F.3d 599, 601 (8th Cir. 2006) (Missouri statute providing tenancy by the entirety ownership of marital property did not provide wife with ownership interest in property owned solely by husband that was subject of drug forfeiture); *United States v. Caruthers*, 765 F.3d 843, 845 (8th Cir.2014) ("The petitioner

must state an interest that is legal, as opposed to equitable."); *United States v. 9844 S. Titan Court*, 75 F.3d 1470, 1478–79 & n. 4 (10th Cir. 1996) (rejecting argument under Colorado law that spouse had current legal or equitable interest in marital property titled in other spouse's name; holding that ownership, no matter how broadly construed in light of the legislative history of 21 U.S.C. § 881, does not encompass mere dominion and control over property titled in another's name), *overruled in part on other grounds by United States v. Ursery,* 518 U.S. 267 (1996); *United States* v. *Satava*, No. 14-261, 2015 WL 1753280 (N.D. Ohio Apr. 7, 2015) (because under state law wife acquired no interest in husband's retirement account until divorce was final, and because divorce was still pending when court issue order forfeiting account as substitute asset, which was when Government's interest vested, wife could not prevail under § 853(n)(6)(A)).

Accordingly, the proposed Substitute Asset Motion should be granted notwithstanding the asserted interests of any third parties, including Sophie Hahn's claimed "marital interest."

C. Forfeiture of the Substitute Asset, Whether Accomplished Pursuant to Forfeiture Authorities or 28 U.S.C. § 2044, Is Not Constitutionally Excessive

The defendant argues that forfeiture of the Substitute Asset is an unconstitutionally excessive penalty in violation of the Eighth Amendment.[6] (Def. Mot. at 2). This argument fails for two reasons. First, as the defendant's Money Judgment of over five million dollars is not an unconstitutional fine against the defendant, it necessarily follows that the forfeiture of substitute property of substantially less value is not either. Second, and in any event, the forfeiture of the Substitute Asset is plainly proportional to the numerous serious and substantial offenses of conviction.

---

[6] While the defendant seems to pursue this argument solely as a basis to deny the Government's motion pursuant to 28 U.S.C. § 2044, in avoidance of doubt the Government will respond to this argument in the context of forfeiture. In either case, the reasoning is the same.

1.  Applicable Law

The Excessive Fines Clause of the Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.   A forfeiture is unconstitutional if it constitutes "punishment for some offense," but does not "bear some relationship to the gravity of the offense that it is designed to punish." *United States* v. *Bajakajian*, 524 U.S. 321, 327 (1998).   In other words, a forfeiture order is unconstitutional when it is "grossly disproportional to the gravity of a defendant's offense." *Bajakajian*, 524 U.S. at 334.   "This standard narrows the judicial role in assessing the excessiveness of forfeiture orders; rather than strict proportionality, we review fines only for gross disproportionality."  *United States v. Chaplin's, Inc.*, 646 F.3d 846, 851 (11th Cir. 2011) (citing *Bajakajian*, 524 U.S. at 337).   This "narrowed role acknowledges principles of institutional competence: proportionality analyses are 'inherently imprecise' and best kept within the province of legislatures, not courts."  *Id.* (citing *Bajakajian*, 524 U.S. at 336). This Circuit has framed this inquiry in the forfeiture context in terms of three factors: "(1) the harshness, or gross disproportionality, of the forfeiture in comparison to the gravity of the offense, giving due regard to (a) the offense committed and its relation to other criminal activity, (b) whether the claimant falls within the class of persons for whom the statute was designed, (c) the punishments available, and (d) the harm caused by the claimant's conduct; (2) the nexus between the property and the criminal offenses, including the deliberate nature of the use and the temporal and spatial extent of the use; and (3) the culpability of each claimant. *von Hofe* v. *United States*, 492 F.3d 175, 186 (2d Cir. 2007).

2.  Discussion

As an initial matter, the defendant's excessive fines fails because the value of the Substitute Asset—$25,000—is significantly less than the $5,506,050 Money Judgment forfeiture penalty

imposed at sentencing, $261,050 of which represents the cash proceeds the defendant generated through his kickback scheme. In imposing this Money Judgment the Court necessarily (and correctly) rejected the defendant's Eighth Amendment excessive fines challenge. (*See* Sentencing Tr. dated Oct. 6, 2022, at 71, 92-95). As courts facing similar challenges have held, the forfeiture of substitute assets of a lesser value than the proceeds generated by the scheme definitionally cannot be "grossly disproportional" so as to constitute an unconstitutional excessive fine. *See, e.g.*, *United States v. Colletti*, 483 F. App'x. 320, 321 (9th Cir. 2012) (order forfeiting substitute assets to satisfy an existing forfeiture money judgment cannot be excessive if the original money judgment was not excessive); *United States v. Shepherd*, 171 F. App'x. 611, 616 (9th Cir. 2006) (if forfeiture of proceeds themselves cannot be disproportional to gravity of offense, neither can forfeiture of a substitute asset that is forfeited when proceeds are unavailable, even if asset is the family home); *United States v. Mahaffy*, No. CR–05–613 (JG)(SMG), 2010 WL 5772889, *6 (E.D.N.Y. Nov. 2, 2010) (forfeiture of substitute asset does not violate Excessive Fines Clause if property's value does not exceed value of criminal proceeds for which property is substituted). For this reason alone, forfeiture of the Substitute Asset does not—indeed cannot—constitute an Eighth Amendment violation.

In any event, forfeiture of $25,000 is not grossly disproportionate to the defendant's offenses and thus not unconstitutionally excessive. Following trial, the defendant was convicted of conspiracy to commit bank fraud and wire fraud affecting a financial institution; conspiracy to commit bank bribery; bank bribery; theft, embezzlement, or misapplication by a bank officer; conspiracy to commit loan fraud; and conspiracy to commit bank fraud. There can be no question that these are all serious offenses which the defendant committed over the course of at least five

years by abusing his position of trust at Noah Bank, and accordingly faced a significant custodial sentence.

As a result of committing these offenses, the defendant faced imprisonment of up to 30 years and a fine of up to $1,000,000 for each of four convictions, and imprisonment of up to 5 years and a fine of up to $250,000 for each of two conspiracy convictions.  As the Court determined at sentencing, the advisory sentencing guideline range applicable to Defendant was 70-87 months' imprisonment, based on a total offense level of 27 and criminal history category 1.  (Sentencing Tr. dated Oct. 6, 2022, at 58).  The range of fines authorized under the Guidelines was $ 25,000 (which equates to the value of the Substitute Asset) to $250,000  (*Id.*).  All of which further demonstrates the gravity of the defendant's conduct.  In light of the defendant's health conditions, age, and other factors, the Court sentenced him to 14 months' imprisonment and imposed no fine.

As the Government is seeking the forfeiture of substitute assets, the forfeiture is considered punitive and subject to proportionality analysis.  The forfeiture of the Substitute Asset is plainly proportional.  The Money Judgment itself represents the total amount of money he fraudulently obtained as a result of the offenses of conviction.  As the Second Circuit recently observed, "our precedents suggest that a forfeiture amount is not necessarily greatly disproportionate where it equals the proceeds of the illegal scheme, even if it significantly exceeds the maximum statutory fine." *United States v. Patterson*, 2022 WL 17825627, at *6 (2d Cir. Dec. 21, 2022).  In this case, since those proceeds are unavailable, the Government can rightly use 21 U.S.C. § 853(p) to forfeit substitute assets, and in this case, the Substitute Asset is worth a small fraction of than the total outstanding Money Judgment. *See*, *e.g.*, *United States v. Shepherd*, 171 F. App'x 611, 616 (9th Cir. 2006) (holding forfeiture of the defendant's home as a substitute asset was not excessive).

The defendant's attempts to relitigate the issue of total amount of proceeds he obtained as a result of the offenses of conviction are improper and should be ignored.  Citing to *United States* v. *Viloski*, 814 F.3d 104, 111 (2d Cir. 2016), he argues that the Court should consider the forfeiture's impact on his ability to earn a living.  While this may be an appropriate factor to consider, in this case the defendant fails to explain how the collection of $25,000 will deprive him of the ability to earn a living, and otherwise his present earning ability comes nowhere close to outweighing the import of the remaining *Bajakajian* factors, all of which point to the same result, that is, that the forfeiture in this case is not grossly disproportionate.  *See, e.g.*, *United States* v. *Dubose*, 146 F.3d 1141, 1146 (9th Cir. 1998) (rejecting a similar argument in determining whether restitution was grossly disproportionate because "an Eighth Amendment's gross disproportionality analysis does not require an inquiry into the hardship the sanction may work on an offender").  Simply put, forfeiture of the Substitute Asset, specifically $25,000, will not deprive the defendant from earning a living.  The fact that the defendant may suffer some financial hardship with the forfeiture of the Substitute Asset is a reality that almost every defendant in a criminal case must face.

Accordingly, the Court should find that the forfeiture of the Substitute Asset does not constitute a violation of the 8th Amendment.

D.  <u>28 U.S.C. § 2044 Supplies an Additional Basis to Apply the Substitute Asset to Satisfy the Defendant's Forfeiture Penalty</u>

Pursuant to the authorities set forth above, the Substitute Asset is properly forfeited as such through the Preliminary Order of Forfeiture as to Substitute Assets.  However, as the Government set forth in its letter-motion dated 20, 2023, 28 U.S.C. § 2044 supplies a separate and independent basis to apply the Substitute Asset towards the defendant's forfeiture penalty.

In arguing otherwise, the defendant focuses again on the concept of marital property. However, as the concept of marital property cannot defeat a forfeiture under the forfeiture authorities, in cannot defeat other federal statutory mechanisms to collect on penalties owed. For example, in *United States v. Donahue*, No. 3-11, 2016 WL 3615260, at *2 (M.D. Pa. July 6, 2016), a spouse (in non-forfeiture context) moved to return cash found on her defendant-husband's person on the basis that it was marital property. The court denied the motion, holding that there is "no case law to suggest that the marital property designation can be employed outside of divorce actions under Pennsylvania law. Therefore, the label "marital property" has no relevance to the [matter]." *Id*.

The same reasoning applies here. The supposed marital interest claimed by Ms. Hahn in the Substitute Asset cannot overcome the ability of the Government to collect it pursuant to 28 U.S.C. § 2044. And as the Government described in its letter-motion, these funds were indisputably provided by the defendant personally to satisfy his bond conditions. (Gov. Ltr. dated Jan. 23, 2023, at 2). Accordingly, this statute supplies a separate and independent basis for the Government to obtain the Substitute Asset to apply towards the defendant's outstanding forfeiture penalty.

\*\*\*

For the foregoing reasons, the Court should enter the proposed Preliminary Order of Forfeiture as to Substitute Assets.[7]

---

[7] The defendant does not challenge the Government's motion to enter the Preliminary Order of Forfeiture as to Substitute Assets with respect to his participation in the TOP program.

Dated:  New York, New York
        February 2, 2023


                                    DAMIAN WILLIAMS
                                    United States Attorney for the
                                    Southern District of New York


                            By:   _/s/ Tara M. La Morte_
                                    Tara M. La Morte
                                    Jessica Greenwood
                                    Anden Chow
                                    Assistant United States Attorneys
                                    One St. Andrew's Plaza
                                    New York, New York 10007
                                    (212) 637-1041/