```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
UNITED STATES OF AMERICA,                                        :
                                                                 :
                                                                 :
                    -v-                                          :    19 Cr. 552 (JPC)
                                                                 :
EDWARD SHIN,                                                     :    OPINION AND
                                                                 :        ORDER
                    Defendant.                                   :
                                                                 :
-----------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

Defendant Edward Shin moves for early termination of his term of supervised release, which is scheduled to conclude on September 1, 2026. The Government and the Probation Department oppose Shin's motion.[1] For reasons that follow, the motion is denied without prejudice to renewal at a later point of Shin's period of supervision.

## I. Background

On May 26, 2022, Shin was found guilty following a jury trial of conspiracy to commit bank fraud and wire fraud, in violation of 18 U.S.C. § 1349; conspiracy to commit bank bribery, in violation of 18 U.S.C. §§ 371 and 215(a)(2); bank bribery, in violation of 18 U.S.C. §§ 215(a)(2) and 2; theft, embezzlement, or misapplication of bank funds by a bank officer, in violation of 18 U.S.C. § 656; conspiracy to commit loan fraud, in violation of 18 U.S.C. §§ 371 and 1014; and conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349. *See* Trial Tr.[2] at 2412:7-

---

[1] According to Shin, his supervising Probation Officer indicated that the Probation Department objects to his request because of her office's policy that renders defendants who received a sentencing enhancement for abuse of trust or use of a special skill, pursuant to U.S.S.G. § 3B1.3, ineligible for early termination of supervised release. Dkt. 273 ("Motion") at 2-3. Shin maintains that, but for that policy, his supervising officer would support his request. *Id.* at 3.

[2] The transcript of Shin's trial can be found at Docket Numbers 187, 189, 191, 193, 195, 197, 199, 201, 203, 205, 207, 209, 211, 213, 215, 217, and 219 (collectively, "Trial Tr.").

2414:25; Dkt. 251 ("Judgment") at 1-2.  Shin's convictions arose from his conduct while serving as Chief Executive Officer ("CEO") of Noah Bank, a Federal Deposit Insurance Corporation-insured regional bank, during the period of 2009 to 2013.  *See* Dkt. 249 ("PSR") ¶¶ 13-24.

While serving as Noah Bank's CEO, Shin participated in the bank's extension of loans to businesses, including loans guaranteed by the Small Business Administration ("SBA").  *Id.*  ¶¶ 13-16.  Shin's fraudulent conduct fell into three buckets.  First, Shin caused Noah Bank to issue commercial loans and SBA-guaranteed loans to businesses in which Shin hid his conflicts of interest from the bank and the SBA.  Trial Tr. at 117:13-118:1, 1133:21-1134:6, 1415:7-15, 1424:24-1426:15, 1433:8-1434:23.  For instance, Shin concealed his $275,000 investment in a business that received an SBA-guaranteed loan from Noah Bank.  *See, e.g.*, Govt. Trial Exhs. 620A, 628, 639, 639-T; Trial Tr. at 1372:12-14, 1415:16-1419:13, 2064:10-23.  Second, Shin caused Noah Bank to issue SBA-guaranteed loans to borrowers that did not meet the SBA's equity injection requirements—money that the borrower had to invest in the business.  Trial Tr. at 349:3-24, 652:2-7, 1433:18-19.  Third, Shin received secret kickbacks from commission fees that Noah Bank paid to a co-conspirator for loans that Noah Bank issued.  *Id.* at 709:24-710:4, 717:5-718:6, 724:17-725:9, 742:7-18.

Shin was sentenced by this Court on October 6, 2022.  His range of incarceration under the United States Sentencing Guidelines was 70 to 87 months' imprisonment.  Dkt. 252 ("Sentencing Tr.") at 56:15-58:6.  The Court varied downward from that range and sentenced Shin to fourteen months' imprisonment, to be followed by three years of supervised release.  *Id.* at 95:24-96:2; Judgment at 3-4.  In arriving at that sentence, the Court cited the seriousness of Shin's criminal conduct, including its extensive nature, as well as the fact that this marked Shin's first conviction, the Court's assessment that there is not a high likelihood of recidivism, and Shin's history and characteristics, with some aspects cutting in his favor and others cutting against him.  Sentencing

Tr. at 84:8-92:16. Shin has completed his term of incarceration and has been on supervised release since on or about September 1, 2023.

On September 20, 2024, just over a year into his supervised release term, Shin moved for early termination pursuant to 18 U.S.C. § 3583(e), attaching several letters and documents in support of his motion. Dkt. 273 ("Motion"). The Government responded to Shin's motion on October 7, 2024, Dkt. 275 ("Opposition"), and Shin filed a reply on October 18, 2024, Dkt. 278 ("Reply").

## II. Discussion

Pursuant to 18 U.S.C. § 3583(e)(1), "after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)," a court may "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." But "[e]arly termination is not . . . warranted as a matter of course." *United States v. Rosario*, No. 17 Cr. 27 (LTS), 2023 WL 7305260, at *2 (S.D.N.Y. Nov. 6, 2023) (internal quotation marks omitted). Section 3583(e)(1) allows a district judge to terminate a defendant's supervised release early "to account for new or unforeseen circumstances." *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997); *see United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016) (per curiam) (explaining that "new or changed circumstances relating to the defendant" are not necessarily required to modify conditions of supervised release; "So long as the court, when modifying supervised release conditions, considers the relevant 18 U.S.C. § 3553(a) sentencing factors, there is no additional requirement that it make a finding of new or changed circumstances with respect to the defendant." (citing *Lussier*, 104 F.3d at 36, among other cases)). "Occasionally, changed circumstances—for instance, exceptionally good behavior by the defendant or a downward turn in the defendant's ability to pay a fine or

3

restitution imposed as conditions of release—will render a previously imposed term or condition of release either too harsh or inappropriately tailored to serve the general punishment goals of section 3553(a)." *Lussier*, 104 F.3d at 36.

Upon consideration of the applicable factors under 18 U.S.C. § 3553(a), the Court declines to terminate early Shin's supervised release. The nature and circumstances of the offense, 18 U.S.C. § 3553(a)(1), Shin's history and characteristics, *id.*, and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, *id.* § 3553(a)(6), counsel against early termination. Shin was convicted of six serious offenses arising from his extensive criminal conduct as Noah Bank's CEO. Contrary to Shin's suggestion, this was hardly a "lapse in judgment," Motion at 3; his behavior stretched on for years and entailed multiple types of fraud. Shin caused Noah Bank to issue loans to businesses in which he had a hidden conflict of interest, caused Noah Bank to issue SBA-guaranteed loans to borrowers that did not meet the SBA's equity injection requirements, and received secret kickbacks from loan commission fees that Noah Bank paid to a co-conspirator. As the Court explained at sentencing, unlike "many of the defendants in this courthouse," Shin did not commit his crimes while facing poverty or dire financial circumstances—his motivation was simply greed. Sentencing Tr. at 87:3-22. Shin's sentence, which entailed a below-Guidelines term of incarceration and a three-year period of supervised release that now follows, reflects the nature and circumstances of his offenses as well as his history and characteristics and the need to avoid unwarranted sentence disparities.

Moreover, in imposing a custodial term well below the Guidelines range, yet with three years of supervision to follow, the Court considered the mitigating factors that Shin presented at sentencing, many of which he presents again now, while accounting for the importance of post-release supervision given his criminal conduct. *See* Sentencing Tr. at 87:23-92:16, 95:24-96:5. The Court also considered the need for individual deterrence, *see* 18 U.S.C. § 3553(a)(2)(B), and

4

assessed that this factor did not weigh in favor of a lengthy term of imprisonment. *See* Sentencing Tr. at 87:23-88:9. "[A]ny further reduction to [the defendant's] already lenient sentence would undermine both specific and general deterrence." *United States v. Briones*, No. 08 Cr. 581 (JFK), 2022 WL 4244005, at *2 (S.D.N.Y. June 29, 2022).

In support of early termination, Shin points to "his exceptionally good behavior, his dedication to his sobriety, his familial support system, and his desire to return to Korea for the remainder of his life." Motion at 7. His success while on supervised release "does not now 'render a previously imposed term or condition of release either too harsh or inappropriately tailored to serve the general punishment goals of section 3553(a).'" *Rosario*, 2023 WL 7305260, at *3 (quoting *Lussier*, 104 F.3d at 36). While the Court is pleased that Shin has maintained his sobriety and had a "spotless disciplinary record" while incarcerated, Reply at 1, "this conduct ultimately aligns with what was expected of [the defendant] at the time of his sentencing." *Rosario*, 2023 WL 7305260, at *3. Shin's desire to return to South Korea, Motion at 4-6, likewise does not override the Section 3553(a) factors that weigh in favor of continuing his term of supervision. *See, e.g.*, *United States v. Fernandez*, No. 10 Cr. 905 (LTS), 2023 WL 3571220, at *2 (S.D.N.Y. May 19, 2023) (noting that the movant's "desire to visit his sons who live out of state without first seeking approval from Probation . . . is clearly not a valid basis for terminating his supervision" (internal quotation marks omitted)); *United States v. Pestana*, No. 08 Cr. 581 (JGK), 2023 WL 2898662, at *3 (S.D.N.Y. April 11, 2023) (rejecting the movant's desire to move to Florida and hope to travel to Venezuela as adequate grounds for early termination of supervised release). Shin also "has not suggested that the terms of supervised release are interfering with the goals of sentencing or have imposed unusual burdens on [him]." *United States v. Quinones*, No. 19 Cr. 87 (JGK), 2023 WL 6959075, at *1 (S.D.N.Y. Oct. 9, 2023); *see also United States v. Wheeler*, No. 20 Cr. 492 (GHW), 2023 WL 4561591, at *2 (S.D.N.Y. July 17, 2023) (denying early termination where the movant

5

"point[ed] to no new or unforeseen circumstances, and no exceptionally good behavior or other factors that warrant early termination").³

Shin's other arguments for early release also are unavailing. He cites his various health issues. *See* Motion at 4. But the Court considered those health issues and discussed them at length at sentencing. *See* Sentencing Tr. at 90:6-14. Nor has Shin given any "reason to believe that his health conditions are exacerbated by his supervised release." *United States v. Pena*, No. 08 Cr. 578 (JGK), 2022 WL 2733871, at *1 (S.D.N.Y. June 27, 2022). Shin also suggests that his actions while on supervised release have gone well beyond mere compliance, pointing to his acts in the community including using his knowledge in finance to train others. *See* Motion at 3-4; Reply at 2. These commendable acts, of course, do not detract from the nature of Shin's offenses. Moreover, this conduct continues Shin's history of similar activities, which the Court factored in his favor at sentencing. *See* Sentencing Tr. at 88:14-89:21. In varying downward significantly in Shin's term of incarceration, yet imposing a three-year period of supervised release, the Court intended for supervised release to help ensure that Shin's pre-sentencing progress continues after his incarceration. "There is nothing in the defendant's submission that causes the Court to reassess that careful balancing." *Quinones*, 2023 WL 6959075, at *1.

The Court is encouraged by Shin's progress in recent years, particularly his compliance while incarcerated, his actions post-incarceration, the strength of his social and familial support network, and his continued sobriety. The Court also has reviewed the multiple letters submitted in support of his application, many of which remark on how Shin's outlook on life has changed after his conviction and incarceration. For these reasons, the Court emphasizes that its decision today is

---

³ The Court notes that, according to Shin, his supervising Probation Officer has expressed her intent to "immediately begin the process of transferring [Shin]'s case to her office's Low Risk Caseload, which would require him to report to her online for the duration of his term of supervision, rather than in person on a quarterly basis as he currently does." Motion at 3. Were this to occur, the terms of Shin's supervised release would be even less taxing on him.

without prejudice to Shin bringing a renewed application for early termination of supervised release in the future. But terminating Shin's supervised release at this juncture—only approximately fourteen months into his term of supervised release—would not adequately "serve the general punishment goals of section 3553(a)," *Lussier*, 104 F.3d at 36, particularly in light of the serious nature of Shin's offenses and the Court's decision at sentencing, after considering the applicable factors under 18 U.S.C. § 3553(a), to significantly vary downward when imposing Shin's term of incarceration, yet to impose three years of supervised release.

### III. Conclusion

Accordingly, the Court declines to terminate Defendant Edward Shin's period of supervised release. This denial is without prejudice to the Probation Office, Shin, or the Government making another application for early termination in the future if appropriate. The Clerk of Court is respectfully directed to close Docket Number 273.

SO ORDERED.

Dated: November 7, 2024
New York, New York

JOHN P. CRONAN
United States District Judge